**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| I.S.T. NORTH AMERICA, LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>TRELLEBORG PIPE SEALS MILFORD INC., TRELLEBORG SEALING SOLUTIONS US INC., TRELLEBORG PIPE SEALS US, INC., TRELLEBORG CORPORATION, TRELLEBORG AB, TRELLEBORG SEALING PROFILES GMBH, CRISTOFFER LJUNGBACK, ANDREAS RENULF, SIMON BURKE, JOHN DOE 1-10, and XYZ COMPANIES 1-10<br><br>                    Defendants. | Civil Action No. 1:25-cv-08349-VSB<br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN SUPPORT OF**
**U.S. DEFENDANTS' MOTION TO DISMISS**

**K&L GATES LLP**

Joanna A. Diakos
599 Lexington Avenue
New York, New York 10022-6030
Telephone: (212) 536-3900
Facsimile: (212) 536-3901
Email: joanna.diakoskordalis@klgates.com

*Counsel for Defendants Trelleborg Pipe Seals Milford, Inc., Trelleborg Sealing Solutions US, Inc., Trelleborg Pipe Seals US, Inc., Trelleborg Corporation, and Christoffer Ljungback*

**TABLE OF CONTENTS**

**Page**

FACTUAL BACKGROUND ................................................................................. 1

ARGUMENT ........................................................................................................ 3

I.    PLAINTIFF'S ALTER-EGO ALLEGATIONS FAIL ..................................... 4

II.   ISTNA'S CLAIMS SHOULD BE DISMISSED TO THE EXTENT THEY ARE A
      MERE REPACKAGING OF A CLAIM FOR BREACH OF THE NDA ....................... 8

      1.    ISTNA CANNOT REPACKAGE AS TORT CLAIMS WHAT IS, IF
            ANYTHING, A CLAIM FOR BREACH OF THE NDA ................................... 8

      2.    ISTNA'S CLAIMS ARE SUBJECT TO ARBITRATION AND SHOULD
            BE DISMISSED ............................................................................... 10

III.  THE COMPLAINT FAILS TO STATE A CLAIM FOR TORTIOUS
      INTERFERENCE WITH CONTRACTUAL RELATIONS ........................................... 11

      1.    THERE ARE VIRTUALLY NO ALLEGATIONS OF CONDUCT
            SPECIFICALLY ATTRIBUTABLE TO ANY U.S. DEFENDANT ................. 11

      2.    THE MERE FACT OF THE ASSET PURCHASE IS INSUFFICIENT TO
            DEMONSTRATE INTENTIONAL PROCUREMENT OF IST
            GERMANY'S BREACH ...................................................................... 13

      3.    IST GERMANY WAS ALREADY IN BREACH OF THE EXCLUSIVITY
            AGREEMENT ................................................................................... 15

IV.   THE COMPLAINT FAILS TO STATE A CLAIM FOR TORTIOUS
      INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS ....................... 16

V.    THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUDULENT
      MISREPRESENTATION AND CONCEALMENT OR NEGLIGENT
      MISREPRESENTATION .................................................................................. 19

      1.    ISTNA'S MISREPRESENTATION AND CONCEALMENT CLAIMS
            SHOULD BE DISMISSED TO THE EXTENT THEY ARE PREDICATED
            ON REPRESENTATIONS NOT ALLEGED TO HAVE BEEN MADE BY
            ANY U.S. DEFENDANT .................................................................... 21

      2.    THE ALLEGED REPRESENTATIONS ARE NOT PLEADED WITH THE
            REQUISITE SPECIFICITY ................................................................. 21

      3.    THE ALLEGED REPRESENTATIONS ARE NONACTIONABLE
            STATEMENTS OF INTENT ................................................................ 22

## TABLE OF CONTENTS
(continued)

**Page**

VI.    THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY ............................................................................. 24

VII.    ISTNA'S REQUEST FOR PUNITIVE DAMAGES SHOULD BE STRICKEN .......... 26

CONCLUSION ............................................................................................................. 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*,
   2018 WL 1273343 (S.D.N.Y. March 5, 2018) ...............................................4, 5, 7

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
   404 F.3d 566 (2d Cir. 2005).............................................................................20

*Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*,
   122 F.3d 130 (2d Cir. 1997)...............................................................................5

*Am. S.S. Owners Mut. Protection v. Cleopatra Navigation Co.*,
   2010 WL 850185 (S.D.N.Y. Mar. 11, 2010) ......................................................6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).............................................................................................3

*Williamson ex rel. At Home Bondholders' Liquidating Tr. v. Verizon Comm's Inc.*,
   2013 WL 227691 (S.D.N.Y. Jan. 22, 2023) ......................................................6

*B & M Linen, Corp. v. Kannegiesser, USA, Corp.*,
   679 F. Supp. 2d 474 (S.D.N.Y. 2010).........................................................8, 12

*Beecher v. Feldstein*,
   8 A.D.3d 597 (2d Dep't 2004)...........................................................................14

*Boehner v. Heise*,
   734 F. Supp. 2d 389 (S.D.N.Y. 2010)...............................................................12

*Brown v. Lockwood*,
   76 A.D.2d 721 (2d Dep't 1980)....................................................................22, 24

*Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*,
   491 B.R. 335 (S.D.N.Y. 2013)............................................................................7

*Cedar Capital Mgt. Grp. Inc. v. Lillie*, 79 Misc. 3d 1238 (N.Y. Sup. Ct. N.Y. Cty. 2023) ......................................................................................................................7

*Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni*,
   2016 WL 5719793 (S.D.N.Y. Sept. 30, 2016)....................................................4

*Cerveceria Modelo, S.A. De C.V. v. USPA Accessories LLC*,
   2008 WL 1710910 (S.D.N.Y. Apr. 10, 2008)...................................................27

*Coca-Cola N.A. v. Crawley Juice, Inc.*,
　2011 WL 1882845 (E.D.N.Y. May 17, 2011) ...................................................................19

*Converged Compliance Solutions, Inc. v. XOP Networks, Inc.*,
　2024 WL 4665114 (S.D.N.Y. Sept. 25, 2024).....................................................................9

*Daisley v. FedEx Ground Package System, Inc.*,
　 2008 WL 5083009 (E.D.N.Y. Dec. 1, 2008) .....................................................................10

*Drakeford v. Washington Mut.*,
　2008 WL 2755838 (S.D.N.Y. July 11, 2008) .....................................................................10

*Edward Kalin v. Xanboo, Inc.*,
　526 F. Supp. 2d 392 (S.D.N.Y. 2007)...................................................................................5

*Ergowerx Intern., LLC v. Maxell Corp. of America*,
　18 F. Supp. 3d 430 (S.D.N.Y. 2014)...................................................................................26

*Fletcher v. Atex, Inc.*,
　68 F.3d 1451 (2d Cir. 1995).................................................................................................5

*Furniture Consultants, Inc. v. Acme Steel Door Corp.*,
　240 A.D.2d 180 (1st Dep't 1997) .......................................................................................26

*Generation Next Fashions Ltd. v. JP Morgan Chase*,
　698 F. Supp. 3d 663 (S.D.N.Y. 2023).........................................................................11, 16

*Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.*,
　206 F. Supp. 3d 869 (S.D.N.Y. 2016).........................................................................16, 18

*High Fall Falls Brewing Co., LLC v. Boston Beer Corp.*,
　852 F. Supp. 2d 306 (W.D.N.Y. 2011) ...............................................................................14

*J.L.B. Equities Inc. v. Ocwen Fin. Corp.*,
　131 F. Supp. 2d 544 (S.D.N.Y. 2001)...................................................................................6

*Jakes-Johnson v. Gottlieb*,
　200 A.D.3d 1679 (4th Dep't 2021).....................................................................................22

*Johnson v. JPMorgan Chase Bank, N.A.*,
　488 F. Supp. 3d 144 (S.D.N.Y. 2020).................................................................................15

*L. Magarian & Co., Inc. v. Timberland Co.*,
　245 A.D.2d 69 (1st Dep't 1997) .........................................................................................25

*Lee v. Brothers*,
　2021 WL 4652336 (S.D.N.Y. Oct. 6, 2021) .................................................................16, 18

*Lehman Bros. Com. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*,
   179 F. Supp. 2d 118 (S.D.N.Y. 2000)........................................................25

*Lin v. Canada Goose US, Inc.*,
   640 F. Supp. 3d 349 (S.D.N.Y. 2022)........................................................20

*In re Livent, Inc., Noteholders Secs. Litig.*,
   151 F. Supp. 2d 371 (S.D.N.Y. 2001)..........................................................4

*In re London Silver Fixing, Ltd., Antitrust Litig.*,
   213 F. Supp. 3d 530 (S.D.N.Y. 2016)........................................................20

*Marino v. Grupo Mundial Tenedora, S.A.*,
   810 F. Supp. 2d 601 (S.D.N.Y. 2011)........................................................25

*Mehmet v. Gautier*,
   2019 WL 4805859 (S.D.N.Y. Sept. 30, 2019)........................................22

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
   861 F. Supp. 2d 344 (S.D.N.Y. 2012)........................................................12

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*,
   975 F. Supp. 2d 392 (S.D.N.Y. 2013)..........................................................6

*Naturopathic Labs. Intern., Inc. v. SSL Americas, Inc.*,
   18 A.D.3d 404 (1st Dep't 2005) ................................................................24

*Oursler v. Women's Interart Ctr., Inc.*,
   170 A.D.2d 407 (1st Dep't 1991) ..............................................................25

*Pilkington N.A., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*,
   420 F. Supp. 3d 123 (S.D.N.Y. 2019)........................................................20

*Planet Payment, Inc. v. Nova Info. Sys., Inc.*,
   2011 WL 1636921 (E.D.N.Y. Mar. 31, 2011)........................................14

*Poon v. Roomorama, LLC*,
   2009 WL 3762115 (S.D.N.Y. Nov. 10, 2009)..........................................8

*Prospect Funding Holdings, LLC v. Vinson*,
   256 F. Supp. 3d 318 (S.D.N.Y. 2017)........................................................13

*Raspberry Holdings LLC v. NextBank Int'l Inc.*,
   2025 WL 438270 (S.D.N.Y. Feb. 7, 2025)........................................21, 22

*RFP LLC v. SCVNGR, Inc.*,
   788 F. Supp. 2d 191 (S.D.N.Y. 2011)........................................................18

*Rivas v. AmeriMed USA, Inc.*,
  824 N.Y.S.2d 41 (1st Dep't 2006) ...................................................................27

*Rocanova v. Equitable Life Assurance Soc'y of the U.S.*,
  83 N.Y.2d 603 (1994) .......................................................................................27

*Rothman v. Gregor*,
  220 F.3d 81 (2d Cir. 2000) ..................................................................................4

*Sci. Components Corp. v. Sirenza Microdevices, Inc.*,
  2006 WL 6937123 (E.D.N.Y. July 10, 2006) ...................................................26

*Sejin Precision Indus. Co. v. Citibank, N.A.*,
  235 F. Supp. 3d 542 (S.D.N.Y. 2016)...............................................................22

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*,
  230 F. Supp. 2d 403 (S.D.N.Y. 2002)..................................................................7

*State St. Global Advisors Tr. Co. v. Visbal*,
  431 F. Supp. 3d 322 (S.D.N.Y. 2020)................................................................11

*Tears v. Boston Sci. Corp.*,
  344 F. Supp. 3d 500 (W.D.N.Y. 2018)...............................................................20

*Telecom Int'l Am., Ltd. v. AT & T Corp.*,
  280 F.3d 175 (2d Cir. 2001).................................................................................9

*U.S. v. Bestfoods*,
  524 U.S. 51 (1998).................................................................................................6

*Uitz v. Lustigman Firm, P.C.*,
  2014 WL 3767056 (S.D.N.Y. July 28, 2014) ...................................................10

*Waite v. Schoenbach*,
  2010 WL 4456955 (S.D.N.Y. Oct. 29, 2010) ......................................................7

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) and 9(b) ...........................................................1, 20, 21, 22

Restatement (Second) of Torts..............................................................................13

Defendants Trelleborg Pipe Seals Milford, Inc., Trelleborg Sealing Solutions US, Inc., Trelleborg Pipe Seals US, Inc., Trelleborg Corporation (collectively, the "**U.S. Entity Defendants**"), and Christoffer Ljungback (together with the U.S. Entity Defendants, the "**U.S. Defendants**") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint filed by Plaintiff I.S.T. North America, LLC ("**ISTNA**" or "**Plaintiff**") pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## FACTUAL BACKGROUND[1]

Plaintiff instituted this action against the U.S. Defendants and Trelleborg Sealing Profiles Germany GmbH ("**Trelleborg Germany**"), Trelleborg AB, Andreas Renulf, and Simon Burke (collectively, the "**Foreign Defendants**"). Trelleborg AB is a Swedish company with its headquarters in Sweden, and Trelleborg Germany is a German limited company whose members are residents of either Germany or Sweden. (Compl. ¶¶ 43-44) Andreas Renulf is a resident of Sweden and is reportedly an executive with Trelleborg AB and Trelleborg Germany. (¶ 47) Simon Burke is alleged to be a resident of the Netherlands and an executive with Trelleborg AB and Trelleborg Germany and the Managing Director of "Trelleborg Seals and Profiles." (¶ 48). Neither individual is alleged to be employed by the U.S. Entity Defendants. (¶¶ 47-48)

On April 17, 2019, ISTNA entered into an exclusivity agreement with I.S.T. Innovative Sewer Technologies, GmbH ("**IST Germany**") governing ISTNA's sale and service in the United States of IST Germany's products, which was later expanded, as of January 1, 2020, to include Canada (the "**Exclusivity Agreement**"). (¶¶ 108, 110) The Exclusivity Agreement designated ISTNA the exclusive representative for the sale of IST Germany's equipment and parts in North

---

[1]   The factual background is taken from the allegations in the Complaint, the documents referenced and incorporated therein, and other materials properly subject to judicial notice. Although the U.S. Defendants deny many of Plaintiff's allegations, they assume them as true solely for purposes of this motion to dismiss.

America. (¶ 110) In a December 31, 2020 Memorandum of Understanding ("**MOU**") between ISTNA and IST Germany, IST Germany sold half of its ownership share in ISTNA to Camali. (¶ 115) ISTNA alleges that during this time period Defendants were executing a plan "with surgical precision and shameless deceit" to "take over" IST Germany and "cut off" ISTNA as its exclusive supplier and undermine its exclusivity in the United States. (¶¶ 4, 121)

Plaintiff alleges that Camali and "Trelleborg" entered into a NDA dated June 17, 2022. (¶ 142) While not disclosed in the Complaint, the NDA was entered into by Camali and Trelleborg AB. (Diakos Decl., Ex. A) ISTNA alleges this NDA only came to exist because Camali was "duped" into providing confidential business information under the purportedly false pretense that "Trelleborg" was interested in purchasing ISTNA. (Compl. ¶¶ 22, 218) ISTNA alleges "Trelleborg—principally through Renulf—" expressed interest in purchasing ISNTA through either Trelleborg Pipe Milford or Trelleborg Pipe US and that in connection with potential purchase discussions, Camali provided Renulf with ISTNA's business plans, projections, and financial statements under the NDA. (¶¶ 22, 140, 218) Allegedly, talks to purchase ISTNA were "merely part of Trelleborg's ruse" and that "Trelleborg" used the information provided by Camali, including customer contact lists, "to expand into the United States and Canada." (¶¶ 146, 147) Swedish law and the Swedish Arbitration Act govern the NDA. (*See* Diakos Decl., Ex. A, NDA ¶ 6)

ISTNA alleges that Defendants Renulf and Ljungback made several misrepresentations to Camali during a dinner held on August 10, 2022, in Piermont, New York. (Compl. at ¶ 154) Specifically, Renulf and Ljungback represented that Trelleborg Germany and Trelleborg AB were acquiring IST Germany in its entirety, and that this acquisition would not affect IST Germany's ability to supply ISTNA. They further asserted that "Trelleborg," acting through the U.S. Entity

Defendants, intended to acquire or invest in ISTNA; that Defendants would honor the Exclusivity Agreement; that ISTNA would be integrated into "Trelleborg"; and that both companies would issue a joint press release announcing the acquisition. The Complaint claims that each of these statements was false and omitted material facts, specifically that at the time of the dinner, "Trelleborg" was actively finalizing a transaction structure with IST Germany that excluded ISTNA's Exclusivity Agreement.  (¶ 157)

Pursuant to a Share and Asset Purchase Agreement dated October 11, 2022 (the "**SAPA**"), Trelleborg Germany acquired IST Germany's assets  but not the Exclusivity Agreement. (¶ 167) ISTNA initiated an arbitration against IST Germany for, *inter alia*, breach of the Exclusivity Agreement (the "**Arbitration**"). (¶ 103) The final award was granted on June 23, 2025 (the "**Final Award**"). (¶ 103) (Diakos Decl., Ex. B)  ISTNA also filed a proceeding for pre-action discovery against certain of the Defendants.  (Compl. ¶¶ 55, 103)  The court granted limited pre-action discovery with respect to certain of the U.S. Entity Defendants but denied Plaintiff's request to serve the Foreign Entity Defendants via the U.S. Entity Defendants on alter-ego grounds.  *See I.S.T. North America v. Trelleborg Pipe Seals Milford, et al.,* Index No. 337873/2024 (NYSCEF No. 53, at 2) (rejecting ISTNA's request to "declare that the US Respondents are not independent entities but are mere departments of the Foreign Respondents").

## ARGUMENT

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).[2]  Although courts must accept factual allegations as true and make reasonable inferences in the plaintiff's favor, it need not accept mere "labels and conclusions," or "naked assertions devoid of further factual enhancement."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*).  Nor must a court "accept as truth . . . pleadings . . . that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." *In re Livent, Inc., Noteholders Secs. Litig.,* 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001).  Indeed, in deciding a motion to dismiss, the court may consider the full text of documents that are quoted in the complaint or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit.  *Rothman v. Gregor,* 220 F.3d 81, 88-89 (2d Cir. 2000).

## I.    PLAINTIFF'S ALTER-EGO ALLEGATIONS FAIL

In a diversity case, the court "appl[ies] the choice-of-law rules of the forum state, here New York, to decide which state's substantive law governs." *Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni,* 2016 WL 5719793, at *3 (S.D.N.Y. Sept. 30, 2016) (quoting *Celle v. Filipino Reporter Enters. Inc.,* 209 F. 3d 163, 175 (2d Cir. 2000).  "Under New York's choice-of- law rules, 'the law of the jurisdiction having the greatest interest in the litigation will be applied[,]'" and "[i]n cases where the court must determine whether a corporate form will be disregarded, the law of the state of incorporation governs."  *Centauro*, 2016 WL 571973, at *3. Here, each of the U.S. Entity Defendants is incorporated in Delaware, so Delaware law applies. (Compl. ¶¶ 39-42)  *See, e.g., A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC,* 2018 WL 1273343, at *4 (S.D.N.Y. March 5, 2018) (applying Delaware law to assess sufficiency of alter-ego allegations on motion to dismiss where defendants were incorporated in Delaware).  A

---

[2] Unless otherwise noted, all case citations herein omit any internal quotation marks, citations, emphases and/or alterations.

"plaintiff seeking to persuade a Delaware court to disregard [an LLC's] corporate structure faces a difficult task[.]" *Id.,* at * 4. Under Delaware law, a court may pierce the corporate veil only where there is fraud or where the corporation is in fact a mere instrumentality or alter ego of its owner. *Id.* To establish this, a party must establish that: (i) the entities in question operated as a single economic entity, and (ii) there is an overall element of injustice or unfairness. *Id.* Factors relevant to whether they operated as a single-economic entity include:

> Whether the corporation was adequately capitalized for the corporate undertaking; whether the corporation was solvent; whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1458 (2d Cir. 1995). To make the second, injustice or unfairness showing, a plaintiff must establish that the corporation effectively exists as a sham or shell through which the parent company perpetrates injustice, which is "a result of an abuse of the corporate form" and "must consist of more than merely the [tort or or breach of contract] that is the basis of the plaintiff's lawsuit." *A.V.E.L.A., Inc.,* 2018 WL 1273343, at *5.

New York law is similarly exacting. To establish alter ego status under New York law, a court must find: "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil". *Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.,* 122 F.3d 130, 134 (2d Cir. 1997). "[C]onclusory allegations of an alter ego are insufficient to survive a motion to dismiss." *Edward Kalin v. Xanboo, Inc.,* 526 F. Supp. 2d 392, 403 (S.D.N.Y. 2007). The veil-piercing inquiry involves many factors, including: (1) disregard of corporate formalities; (2) inadequate capitalization; (3) intermingling of funds; (4) overlap in ownership, officers, directors and personnel; (5) common office space, address and telephone numbers; (6)

the degree of discretion shown by the allegedly dominated corporation; (7) whether the dealings between the entities are at arm's length; (8) whether the corporations are treated as independent profit centers; (9) payment or guarantee of the corporation's debts by the dominating entity; and (10) intermingling of property. *American Fuel Corp.,* 122 F.3d at 134.

It is well-established under both Delaware and New York law that simply alleging that one entity is the parent or subsidiary of another is insufficient to demonstrate alter egos status. *See, e.g.*, *U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998) ("[n]either does the mere fact that there exists a parent-subsidiary relationship between two corporations make the one liable for the torts of its affiliate"); *see also Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 392, 404 (S.D.N.Y. 2013) ("allegations of mere shared management, shared corporate principles, or a parent's ownership and operation of a subsidiary—even exclusively for the parent's gain—do not merit piercing the corporate veil"). Instead, a plaintiff must demonstrate that a corporate entity is so "dominated" by another "that the subsidiary primarily transacts the parent's business rather than its own business." *Am. S.S. Owners Mut. Protection v. Cleopatra Navigation Co. Ltd.*, 2010 WL 850185, at *3 (S.D.N.Y. Mar. 11, 2010). While ISTNA baldly alleges that Trelleborg AB "so dominated and controlled the business, finances, and policies of each of" the U.S. Entity Defendants that "any separate corporate existence . . . ceased to exist," the Complaint does not contain enough well-pleaded facts to demonstrate such purported "domination." (Compl. ¶ 54)

For example, ISTNA emphasizes allegations that the Defendants use a common trade name (*i.e.*, "Trelleborg Seals & Profiles") (*see* Compl. ¶¶ 65-81), and that their website and communications reference "Trelleborg" as a "global organization" or "group." (¶¶ 51-64) Such allegations are insufficient to "create a single entity structure given the sophistication and complexity of today's corporate world." *Williamson ex rel. At Home Bondholders' Liquidating*

*Tr. v. Verizon Comm's Inc.*, 2013 WL 227691 at *3 (S.D.N.Y. Jan. 22, 2023) (citing *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,* 230 F. Supp. 2d 403, 411 (S.D.N.Y. 2002)).  An advertising strategy that omits the existence of a parent-subsidiary relationship does not equate to a parent corporation exercising control over its subsidiary's operations.  *J.L.B. Equities Inc. v. Ocwen Fin. Corp.,* 131 F. Supp. 2d 544, 550 (S.D.N.Y. 2001).

Similarly, courts have found that shared branding or unified presentation, such as common logos or websites, is insufficient to demonstrate pervasive control.  *See, e.g., In re Ski Train Fire,* 230 F. Supp. 2d 403, 411 (S.D.N.Y. 2002) (rejecting alter-ego allegations as insufficient to confer jurisdiction on foreign parent).  Allegations that entities "hold themselves out to the world as a single entity" are likewise insufficient.  *Id.*  Here, ISTNA attempts to establish alter-ego status by alleging that the Defendants are part of a "large, multinational company" operating as a "global organization" within "One" Trelleborg or the "Trelleborg Group." (Compl. ¶¶ 51-64)  Delaware and New York law are clear that such allegations are inadequate to demonstrate the requisite level of control for veil-piercing.  *See, e.g., A.V.E.L.A., Inc.,* 2018 WL 1273343, at *5-6 (granting motion to dismiss where allegations of shared phone numbers, legal and finance departments, and trademark ownership insufficient to find that corporate entities are alter egos).

Furthermore, ISTNA's claim that Defendants share senior executives, such as identifying Katarina Olsson as both the "general counsel of Trelleborg AB" and the "president of Trelleborg Corporation," does not support ISTNA's alter-ego theory. Sharing employees, officers, or directors does not justify disregarding the corporate form.  *See, e.g., A.V.E.L.A., Inc.,* 2018 WL 1273343, at *5-6 (fact that subsidiaries may share officers, directors, and employees with their parent is insufficient to infer that subsidiary is mere instrumentality of parent); *Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335, 350 (S.D.N.Y. 2013); *see also Cedar Capital*

*Mgt. Grp. Inc. v. Lillie*, 79 Misc. 3d 1238(A), *9 (N.Y. Sup. Ct. N.Y. Cty. 2023) ("[t]hat Kent is alleged to be an officer, director, manager, shareholder, member, managing member or principal in CAT and every other corporate defendant is insufficient proof of complete domination"). Similarly, conclusory allegations of shared office space and operational locations are insufficient. *See Waite v. Schoenbach*, 2010 WL 4456955, at *10 (S.D.N.Y. Oct. 29, 2010) (allegations that parent and subsidiaries "operate at the same location" insufficient to support veil piercing).

Because the Complaint fails to plead facts sufficient to demonstrate that the Defendants are "alter egos" of one another, the Court should reject ISTNA's reliance on group pleading and instead consider only the well-pleaded allegations specifically attributing conduct to the U.S. Defendants.

## II.   ISTNA'S CLAIMS SHOULD BE DISMISSED TO THE EXTENT THEY ARE A MERE REPACKAGING OF A CLAIM FOR BREACH OF THE NDA

In the Complaint, ISTNA seeks to recast what are fundamentally contract claims as tort claims, even though the underlying allegations concern an alleged breach of an NDA between ISTNA and Trelleborg AB for misuse of confidential information. Rather than directly asserting breach of contract, ISTNA attempts to repackage its claims in tort, which is impermissible under New York law and warrants dismissal.  Additionally, these claims are subject to a mandatory arbitration.

### 1.   ISTNA Cannot Repackage As Tort Claims What Is, If Anything, A Claim For Breach Of The NDA

The NDA required Trelleborg AB to treat ISTNA's business information as confidential, prohibit disclosure to third parties, and limit its use solely to evaluating a potential acquisition of ISTNA. (Diakos Decl., Ex. A, NDA ¶ 1) ISTNA is trying to reframe this contract dispute over alleged misuse of confidential information as tort claims, but New York law prohibits turning a breach of contract into a tort without an independent legal duty.  *Poon v. Roomorama, LLC*, 2009

WL 3762115, at *5 (S.D.N.Y. Nov. 10, 2009) ("[i]t is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated"); *see also B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010) ("[a] fraud claim will not survive if it merely restates a claim for breach of contract"). Courts consistently reject efforts to "dress up" contract claims as fraud or other torts when the dispute arises from the agreement itself. *See, e.g., Converged Compliance Solutions, Inc. v. XOP Networks, Inc.*, 2024 WL 4665114, at *12 (S.D.N.Y. Sept. 25, 2024) (dismissing claims and noting that where valid agreement governs submit matter of dispute claims arising from the dispute are contractual and plaintiff may not "repackage them as sounding in fraud, conversion and other torts" unless based on duty independent of contract); *Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001) ("simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim").

Here, every claim advanced by ISTNA is rooted in alleged misuse of information governed by the NDA. (*See, e.g.*, Compl. ¶¶ 5 (Trelleborg used confidential business information "obtained . . . under the guise of a nondisclosure agreement" as a "roadmap for its own market invasion"); 22 (Renulf "dupe[d]" Camali into sending ISTNA's confidential business information "all under the auspices of a non-disclosure agreement");140-53 ("Trelleborg" used ISTNA's confidential business information "provided to Trelleborg under a non-disclosure agreement" to "expand into the United States and Canada markets"); 218 (Burke "duped Mr. Camali into providing confidential business information to Trelleborg, which information was used against ISTNA later to usurp customers"); 220 ("Defendants" induced IST Germany's breach of the Exclusivity Agreement by "duping Mr. Camali into sending Trelleborg confidential and proprietary

information about ISTNA's customers" which was "utilized by Defendants after the Exclusivity Agreement was repudiated"); 228 ("Mr. Camali had provided to Trelleborg executives . . . ISTNA's propriety business information and customer lists . . . believing it would be used by Trelleborg to assist it in acquiring IST Germany and ISTNA"); 236 (Renulf "falsely stated to Mr. Camali that Trelleborg wanted ISTNA's propriety and confidential business information to evaluate a potential acquisition of ISTNA . . . when in fact Trelleborg never intended to acquire ISTNA and in fact used this information to usurp ISTNA's customers"); 246 (Renulf "falsely stated to Mr. Camali that Trelleborg wanted ISTNA's propriety and confidential business information to evaluate a potential acquisition of ISTNA")).  Such repackaging is legally insufficient and the claims should be dismissed.  *See Converged Compliance Solutions, Inc.,* 2024 WL 4665114, at *12 (dismissing contract claims repackaged as torts); *Uitz v. Lustigman Firm, P.C.*, 2014 WL 3767056, at *2–3 (S.D.N.Y. July 28, 2014) (dismissing plaintiff's tort claims for failure to specify a legal duty independent of the contract).

### 2.    ISTNA's Claims Are Subject To Arbitration And Should Be Dismissed

ISTNA also avoids alleging a breach of the NDA because it contains a mandatory arbitration clause requiring that disputes "arising out of or in relation to this Agreement" be resolved by arbitration in accordance with the Swedish Arbitration Act. (*See* Diakos Decl., Ex. A, NDA ¶ 6)  The alleged misuse of ISTNA's confidential business information falls squarely within the scope of the arbitration provision.  Courts routinely enforce such provisions, dismissing claims that fall within the scope of a valid arbitration agreement.  *See Daisley v. FedEx Ground Package System, Inc.*, No. 08 CV 4063, 2008 WL 5083009, at *4 (E.D.N.Y. Dec. 1, 2008) (dismissing claim subject to arbitration provision in employment agreement); *Drakeford v. Washington Mut.*, 2008 WL 2755838, at *2 (S.D.N.Y. July 11, 2008) ("[u]nder the Federal Arbitration Act . . . a district court may dismiss or stay the court proceedings if it finds a valid arbitration agreement exists").

## III.    THE COMPLAINT FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

To state a claim under New York law for tortious interference with contractual relations, a plaintiff must allege: (1) the existence of a valid contract between the plaintiff and a third party, (2) the defendant's knowledge of that contract, (3) the defendant's intentional procurement of the third-party's breach of contract without justification, (4) actual breach of the contract, and (5) damages resulting therefrom. *Generation Next Fashions Ltd. v. JP Morgan Chase,* 698 F. Supp. 3d 663 (S.D.N.Y. 2023); *State St. Global Advisors Tr. Co. v. Visbal*, 431 F. Supp. 3d 322, 347-48 (S.D.N.Y. 2020).   Moreover, "a plaintiff must allege that the contract would not have been breached 'but for' the defendant's conduct." *Generation Next Fashions Ltd.,* 698 F. Supp. 3d at 683.  ISTNA's claim for tortious interference with contractual relations fails for multiple reasons.

### 1.    There Are Virtually No Allegations Of Conduct Specifically Attributable To Any U.S. Defendant

As an initial matter, the Complaint identifies virtually no alleged conduct specifically attributable to the U.S. Defendants.  Instead, the Complaint relies on impermissible group pleading and alter ego allegations which, for reasons stated *supra*, are insufficient to attribute the alleged conduct of the Foreign Defendants to the U.S. Defendants.   Indeed, ISTNA's core allegation with respect to its claim for tortious interference with contract is that IST Germany's breach of the Exclusivity Agreement was procured by the entering of the SAPA which ISTNA alleges "stripp[ed] IST Germany of [its] assets and render[ed] it unable to perform." (Compl. at ¶ 221; *see also* ¶¶ 17 (alleging that "Trelleborg" acquired assets of IST Germany, "leaving IST Germany a non-performing shell"); 24 (alleging that "[b]y virtue of [the SAPA], Trelleborg effectively left IST Germany entirely unable to perform as ISTNA's exclusive supplier").  The US Defendants were not parties to the SAPA.  Rather, the SAPA was between IST Germany and Trelleborg

11

Germany.[3] As such, ISTNA cannot predicate its claim against the U.S. Defendants on allegations that "Defendants" or "Trelleborg" procured IST Germany's breach of the Exclusivity Agreement by entering into the SAPA.

The only alleged conduct ISTNA attributes to any of the U.S. Defendants are purported representations made by Ljungback to Camali during a single dinner meeting. (*See, e.g.*, Compl. ¶¶ 154-61) But such allegations exclusively relate to conduct directed *to Camali and ISTNA*, not to IST Germany. As such, it is entirely unclear how such conduct could possibly have induced *IST Germany's* breach of the Exclusivity Agreement. Courts routinely dismiss tortious interference claims where the plaintiff fails to allege that the defendant took any specific action toward a third party with which the plaintiff had a contract. *See, e.g., Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 367-68 (S.D.N.Y. 2012) ("[p]laintiff does not allege that Defendants took any actions towards third parties with which Plaintiff allegedly had contracts"); *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 485 (S.D.N.Y. 2010) ("[t]he defendant's interference must be direct: the defendant must direct some activities towards the third party"); *Boehner v. Heise*, 734 F. Supp. 2d 389, 404-05 (S.D.N.Y. 2010) ("[d]efendants must have directed some activities toward the customers whose contracts are alleged to have been breached"). As such, allegations that "Defendants" induced IST Germany's breach by "making misrepresentations to Mr. Camali to hide the Takeover from him" (*see, e.g.*, Compl. ¶ 218) are insufficient to state a claim for tortious interference with contract.

---

[3]    While the Complaint does not allege that Trelleborg Germany was the counterparty to the SAPA, the Final Award that is referenced in the Complaint states that the SAPA was entered into by IST Germany and Trelleborg Germany (Diakos Decl., Ex. B, Final Award ¶ 14)

### 2.    The Mere Fact Of The Asset Purchase Is Insufficient to Demonstrate Intentional Procurement Of IST Germany's Breach

As discussed above, ISTNA's claim for tortious interference with contract is predicated almost entirely on the SAPA. (*See, e.g.*, Compl. ¶¶ 17, 24, 221)  Even if the act of entering into the SAPA could be attributed to the U.S. Defendants (although it cannot), allegations that IST Germany was rendered unable to perform under the Exclusivity Agreement as a consequence of the Asset Purchase—and even that the U.S. Defendants may have known IST Germany would not be able to perform—are insufficient to demonstrate the intentional procurement of IST Germany's breach.

The Restatement (Second) of Torts provides that a party does not induce or procure a breach of contract where it "merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person."  Restatement (Second) of Torts § 766, comment n (1979).  To illustrate this point, the Restatement provides the following example:

> For instance, B is under contract to sell certain goods to C. He offers to sell them to A, who knows of the contract. A accepts the offer and receives the goods. A has not induced the breach and is not subject to liability under the rule stated in this Section.

*Id.*  Thus, courts in the Southern District of New York, applying New York law, have held that "merely acting with knowledge that a third party may breach a contract with some other party is not sufficient to constitute procurement of the breach."  *Prospect Funding Holdings, LLC v. Vinson*, 256 F. Supp. 3d 318, 328 (S.D.N.Y. 2017).

This well-established principle of law has been applied to dismiss tortious interference claims in the very context presented here – a third party rendered unable to perform its obligations under a contract with the plaintiff because of the defendant's purchase of the third party's assets. In *High Fall Falls Brewing Co., LLC v. Boston Beer Corp.*, the counterclaimant asserted a claim

for tortious interference with contract, alleging that the counter-defendants tortiously interfered with the counterclaimant's production agreement with a third party "by purchasing [the third party's] assets, which resulted in [the third party] breaching the Production Agreement with [counterclaimant]." 852 F. Supp. 2d 306, 311 (W.D.N.Y. 2011). The Court granted the counter-defendants' motion to dismiss, holding that counter-defendants "merely purchased [the third party's] assets, but not its obligations under the Production Agreement, knowing that [the third party] would not be able to perform the production agreement after it sold its assets to [counter-defendants]," and that this was insufficient to assert a claim for tortious interference under New York law. *Id.* (finding that counter-defendants' purpose in purchasing the assets "was not to cause [a] breach" but rather "to purchase [the third party's] assets and operate a brewing company").

The decision in *High Falls Brewing* also is consistent with the related principle that "[g]enerally, a party cannot be held liable for tortious interference for refusing to assume a contract." *See Planet Payment, Inc. v. Nova Info. Sys., Inc.*, 2011 WL 1636921, at *12 (E.D.N.Y. Mar. 31, 2011) (applying New York law) (holding that defendant was not liable for tortious interference with contract where it purchased a corporation's assets but did not assume the corporation's agreement with a third party, and the corporation consequently was unable to perform its obligation under the agreement). In the case of an asset purchase that leaves the seller unable to perform its contractual obligations to a third party, the act of purchasing the assets is "merely incidental" to any resulting breach and does not give rise to a claim against the purchaser for tortious interference with contract. *See Beecher v. Feldstein*, 8 A.D.3d 597, 598 (2d Dep't 2004) (defendant did not procure breach of lease between car dealership and dealership's patron, where defendant purchased dealership but did not assume balance of auto lease, and relocated

dealership, because "defendant's actions . . . were merely incidental to the dealership's breach of the lease").

Here, the Complaint similarly alleges that "Defendants" tortiously interfered with ISTNA's Exclusivity Agreement with IST Germany by purchasing IST Germany's assets with the knowledge that, without the purchased assets, IST Germany would be unable to perform under the Exclusivity Agreement. (Compl. ¶ 219 ("[e]ach of the Defendants was aware of the [Exclusivity] Agreement and knew or should have known that by excluding it from the Takeover, and refusing to honor the Agreement, IST Germany would breach the contract")).  New York law is clear that the mere refusal of an asset purchaser to assume a contract in connection with an asset purchase, even if such refusal leaves the seller unable to perform under the contract, does not amount to intentional procurement of any resulting breach by the seller. As such, even if ISTNA could somehow predicate its tortious interference claim against the U.S. Defendants on the purchase of IST Germany's assets (which it cannot because the U.S. Defendants were not parties to the SAPA and did not purchase IST Germany's assets), such claim would still fail.

### 3.    IST Germany Was Already In Breach Of The Exclusivity Agreement

While ISTNA alleges that "Defendants" tortiously interfered with its Exclusivity Agreement by purchasing IST Germany's assets and rendering it unable to perform its contractual obligations, in the arbitration the Tribunal determined that IST Germany was *already* in breach of the Exclusivity Agreement at the time of the Asset Purchase. Specifically, in its Final Award[4], the Tribunal concluded that IST Germany "breached the [Exclusivity Agreement] . . . before the

---

[4]    The Final Award is incorporated by reference in the Complaint (*see, e.g.*, Compl. ¶¶ 103, 209-14) and may be considered by the Court in deciding this motion.  *See, e.g., Johnson v. JPMorgan Chase Bank, N.A.,* 488 F. Supp. 3d 144, fn. 29 (S.D.N.Y. 2020) (noting that court can consider documents incorporated by reference in complaint on motion to dismiss) (citing *Chambers v. Time Warner Inc.,* 282 F.3d 147, 153 (2d Cir. 2002)).

repudiation, by selling some of its products in the United States in violation of the Agreement's exclusivity obligations and by selling some products that were defective." (*See* Diakos Decl., Ex. B, Final Award, at ¶¶ 2, 147-48, 149-62)  As such, Plaintiff cannot demonstrate a critical element of its claim, i.e., that the contract would not have been breached but for the defendant's conduct. *Generation Next Fashions Ltd.,* 693. F. Supp. 3d at 683.

## IV.    THE COMPLAINT FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

ISTNA's claim for tortious interference with prospective economic relations fairs no better. Claims for tortious interference with prospective economic relations are "difficult . . . to sustain with requirements more demanding than those for interference with [the] performance of an existing contract." *Lee v. Brothers*, 2021 WL 4652336, at *5 (S.D.N.Y. Oct. 6, 2021). A plaintiff must allege that "(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Id.*  "In addition, the defendant's interference must be direct. The defendant must target some activities directed toward the third party and convince the third party not to enter into a business relationship with the plaintiff." *Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.*, 206 F. Supp. 3d 869, 907-08 (S.D.N.Y. 2016).

The Complaint alleges that "Defendants" tortiously interfered with ISTNA's economic relations by (i) unjustifiably refusing to honor ISTNA's requests for parts and equipment for customers, (ii) forcing ISTNA to proceed on "unacceptable" business terms by unjustifiably increasing prices and requiring prepayment for parts and equipment, and (iii) contacting ISTNA's customers directly, providing the customers with price lists for products previously distributed by ISTNA, and informing the customers that products and support would no longer be available

through ISTNA but rather that "Trelleborg" would support and service existing customers of ISTNA. (Compl. ¶¶ 223-31)  None of these allegations are sufficient to maintain a claim for tortious interference with prospective economic relations against the U.S. Defendants.

As an initial matter, the Complaint once again fails to identify virtually any conduct that is attributable to the U.S. Defendants.  For example, the Complaint alleges that "Trelleborg employees and executives, including Burke [(alleged to be an 'executive' with Trelleborg AB and Trelleborg Germany) (Compl. ¶ 48)], began contacting ISTNA's customers directly to provide them with price lists for products and services that were previously distributed . . . through ISTNA." (*Id.* at ¶ 195)  The Complaint goes on to allege that on July 20, 2023, Burke acknowledged that "Trelleborg" was "taking over" ISTNA's business by emailing ISTNA's customers to inform them that product support and service would no longer be available through ISTNA. (*Id.* at ¶¶ 200-01) The Complaint further alleges that "Trelleborg—again through Burke— refused to provide replacement or repaired equipment, including defective pipe cutting robots," which purportedly prevented ISTNA from servicing its customers and resulted in the delayed delivery of consumable products. (*Id.* at ¶ 198)  The Complaint also alleges that "IST Germany" started to "take directions" – again through "Burke" – to "increase prices for equipment and parts," and that later, with "Trelleborg agents, including Burke, fully in control of IST Germany's business operations in 2023, price increases continued . . . ." (*Id.* at ¶¶ 163, 166)  The foregoing allegations do not identify any conduct by the U.S. Defendants, and therefore ISTNA's claim for tortious interference with economic relations may be dismissed for this reason alone.

Even if any of the conduct alleged in the Complaint could be attributed to the U.S. Defendants, ISTNA's claim would still be deficient for several reasons.  *First*, to the extent ISTNA's claim is based on allegations that "Defendants" or "Trelleborg" (i) increased prices for

ISTNA and required prepayment by ISTNA, or (ii) refused to honor ISTNA's requests for parts or equipment, ISTNA's claim fails because such allegations do not identify "activities directed toward [a] third party." *See Gym Door Repairs*, 206 F. Supp. 3d at 907-08.

*Second*, although the Complaint alleges (albeit falsely and in entirely conclusory fashion) that "Defendants" acted "maliciously" or "with actual malice," it does not allege that Defendants acted "solely out of malice." To the contrary, ISTNA alleges Defendants acted for the purpose of entering the North American trenchless pipe repair market. (*See, e.g.*, Compl. ¶¶ 22, 88, 123) As such, ISTNA must plead that the U.S. Defendants interfered with ISTNA's prospective economic relations using wrongful (*i.e.*, dishonest, unfair, or improper) means. The Complaint does not plausibly allege that the U.S. Defendants employed any such wrongful means.

The "wrongful means" requirement is "demanding." *RFP LLC v. SCVNGR, Inc.*, 788 F. Supp. 2d 191, 197 (S.D.N.Y. 2011). "In all but the most egregious circumstances, 'dishonest, unfair or improper means' must amount to misconduct that constitutes either a crime or an independent tort." *Lee*, 2021 WL 4652336 at *5. "Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations." *Gym Door Repairs*, 206 F. Supp. 3d at 908.

Here, ISTNA does not plausibly allege that the purportedly interfering acts (*i.e.*, refusing parts or equipment, increasing prices, or contacting customers) amount to independent crimes or torts. It's plain that such conduct is not criminal (and ISTNA does not allege otherwise), and ISTNA's other tort claims do not appear to be based on such alleged conduct. To the extent ISTNA contends that they are, the Complaint fails to state a claim for *any* tort for reasons discussed herein. But perhaps more importantly, it is clear under New York law that demonstrating "wrongful

means" requires pleading conduct that is beyond legitimate competition or business activities.  For example, courts have held that the mere termination of a distribution agreement, without more, does not satisfy the wrongful means requirement.  *See Coca-Cola N.A. v. Crawley Juice, Inc.*, 2011 WL 1882845, at *7 (E.D.N.Y. May 17, 2011).  And ISTNA's own allegations suggest that interfering acts amount to, if anything, a breach of contract, not an independent tort. (Compl. ¶ 163 (price increases were "foreclosed . . . under the Exclusivity Agreement"))  Indeed, and as discussed herein, allegations that "Trelleborg" or "Defendants" impermissibly contacted ISTNA's customers are nothing more than an attempt to repackage a claim for purported misuse of confidential information provided under the NDA (*i.e.*, a breach of contract) into a tort. Accordingly, ISTNA has failed to state a claim against the U.S. Defendants for tortious interference with prospective economic relations.

## V.    THE COMPLAINT FAILS TO STATE A CLAIM FOR FRAUDULENT MISREPRESENTATION AND CONCEALMENT OR NEGLIGENT MISREPRESENTATION

The Complaint purports to assert claims for fraudulent misrepresentation and concealment and negligent misrepresentation based on "numerous misstatements of material fact" and allegedly "false representations" that "Defendants" "should have known were incorrect."  (Compl. ¶¶ 233, 245)  In particular, ISTNA alleges that "Ljungback and Renulf" made false and misleading representations to Camali during a dinner meeting (*id.* at ¶¶ 234-35, 245); that "Renulf[,] . . . on behalf of the Entity Defendants," misrepresented that "Trelleborg" was preparing a new distribution agreement for ISTNA following the Asset Purchase, and in the meantime "intended to honor ISTNA's prior [Exclusivity] Agreement with IST Germany" (*id.* at ¶¶ 236, 246); and that "Renulf" falsely stated to Camali that "Trelleborg" was requesting ISTNA's business information to evaluate a potential acquisition of ISTNA. (*Id.* at ¶¶ 236, 246)  These allegations are insufficient

to state a claim against any of the U.S. Defendants for fraudulent misrepresentation or concealment or negligent misrepresentation.

To state a claim under New York law for fraudulent misrepresentation, a plaintiff must allege: (1) a misrepresentation or a material omission of fact which was false and known to be false by the defendant, (2) made for the purpose of inducing the plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the misrepresentation or material omission, and (4) resulting injury to the plaintiff. *Tears v. Boston Sci. Corp.*, 344 F. Supp. 3d 500, 514 (W.D.N.Y. 2018). To state a claim for fraudulent concealment, a plaintiff must allege: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages. *Id.* To state a claim under New York law for negligent misrepresentation, a plaintiff must allege: (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information. *Pilkington N.A., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 420 F. Supp. 3d 123, 141 (S.D.N.Y. 2019).

Both causes of action are subject to a heightened pleading standard under Rule 9(b) of the Federal Rules of Civil Procedure. *See In re London Silver Fixing, Ltd., Antitrust Litig.,* 213 F. Supp. 3d 530, 572 (S.D.N.Y. 2016) ("[a] claim of fraudulent concealment must be pleaded with particularity, in accordance with the heightened pleading standards of Rule 9(b)"); *see also Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 584 (2d Cir. 2005) (requiring a negligent misrepresentation claim to meet heightened pleading standard under Rule 9(b)); *Lin v. Canada Goose US, Inc.*, 640 F. Supp. 3d 349, 361 (S.D.N.Y. 2022) ("[n]egligent misrepresentation claims are subject to the heightened pleading standard under Rule 9(b)").

1.    **ISTNA's Misrepresentation And Concealment Claims Should Be Dismissed To The Extent They Are Predicated On Representations Not Alleged To Have Been Made By Any U.S. Defendant**

ISTNA's misrepresentation and concealment claims are based in part on statements allegedly made by individuals other than Ljungback or anyone alleged to be employed by or serve as an agent of any U.S. Entity Defendant. (*See, e.g.*, Compl. ¶¶ 236, 246 (alleging that "Renulf[]" misrepresented that "Trelleborg" was preparing a new distribution agreement for ISTNA following the Asset Purchase, and in the meantime "intended to honor ISTNA's prior [Exclusivity] Agreement with IST Germany," and that "Renulf" falsely stated to Camali that "Trelleborg" was requesting ISTNA's business information to evaluate a potential acquisition of ISTNA))   As discussed *supra*, even if such statements were actionable (which they are not), there is no basis for imputing these representations to the U.S. Defendants and the claims based on such representations should be dismissed.[5]

2.    **The Alleged Representations Are Not Pleaded With The Requisite Specificity**

The only purportedly false statements the Complaint even comes close to alleging to have been made by the U.S. Defendants are the alleged statements made during the dinner meeting, which was attended by Messrs. Renulf, Ljungback, and Camali.  These statements, however, are not alleged with a level of particularity sufficient to satisfy by Rule 9(b). Rather, ISTNA yet again attempts to rely on group pleading by alleging that during the dinner, "Ljungback **and** Renulf," apparently acting on behalf of all "Defendants" and "their affiliated entities," "made a series of

---

[5] The fraudulent concealment and negligent misrepresentation claims should also be dismissed because Plaintiff has not alleged that the U.S. Defendants had a duty, as a result of a special relationship or otherwise, to give correct information.  *See, e.g., Raspberry Holdings LLC v. NextBank Int'l Inc.*, 2025 WL 438270, at *11 (S.D.N.Y. Feb. 7, 2025) (dismissing negligent misrepresentation claim and stating that defendant owed no special duty in negotiating arms-length contract with plaintiff).

material misrepresentations. (Compl. ¶¶ 156, 157 ("Ljungback **and** Renulf stated to Mr. Camali without qualification . . ."), 161 ("Ljungback **and** Renulf knew or were aware of these facts when they spoke . . ."), 234 ("Ljungback **and** Renulf made numerous statements of fact to Mr. Camali during the Piermont Dinner that were false and misleading"), 245 (similar)).  It's unclear from the Complaint which, if any, of the allegedly false representations were made by Mr. Ljungback, or whether ISTNA is alleging that both Messrs. Ljungback and Renulf separately made the allegedly false statements. The distinction is critical: Ljungback is alleged to be a director and employee of one or more of the U.S. Entity Defendants, while Renulf is alleged to be an executive with Trelleborg AB and Trelleborg Germany. (*Id.* at ¶¶ 46-47)  As such, ISTNA's claims should be dismissed for failure to satisfy Rule 9(b). *See Raspberry Holdings LLC*, 2025 WL 438270, at *10 (dismissing fraud claim where plaintiff "[did] not specify who made the[] statement[]").

### 3.     The Alleged Representations Are Nonactionable Statements Of Intent

ISTNA's claims fail for the additional reason that they are based on nonactionable statements of intent and/or prediction, which cannot sustain a fraud claim. *See Sejin Precision Indus. Co. v. Citibank, N.A.*, 235 F. Supp. 3d 542, 554-55 (S.D.N.Y. 2016) (finding statement that currency would depreciate was "a prediction of future events, which courts applying New York law have held cannot sustain a fraud claim"); *see also Jakes-Johnson v. Gottlieb*,  200 A.D.3d 1679 (4th Dep't 2021) (affirming dismissal of fraud and negligent misrepresentation claims where statements to induce plaintiff to sign agreement were "nonactionable statements of prediction or expectation"); *Mehmet v. Gautier*, 2019 WL 4805859, at *10 (S.D.N.Y. Sept. 30, 2019) (dismissing fraud claim as nonactionable where based on "merely a statement of intent to perform"). Indeed, "[i]t is the general rule that fraud cannot be predicated upon statements which are promissory in nature at the time they are made and which relate to future actions or conduct." *Brown v. Lockwood*, 76 A.D.2d 721, 731 (2d Dep't 1980).

Here, all of the allegedly false representations were either nonactionable statements of intent or nonactionable statements of expectation or prediction (as opposed to statements concerning current or past facts or conditions). For example, the Complaint alleges "Ljungback and Renulf" stated that "the Foreign Entities were acquiring IST Germany in its entirety" (an acquisition that had not yet occurred and the terms of which were still being negotiated and, thus, could change); that "Trelleborg, through the U.S. entities, intended to acquire or invest directly in ISTNA"; that "Defendants would honor ISTNA's Exclusivity Agreement" after the acquisition (which, again, had not yet occurred); that ISTNA "would be integrated into Trelleborg" after the acquisition; that "the two companies would issue a joint press release to announce the acquisition"; and that "the Foreign Entities and ISTNA would jointly announce the acquisition through a coordinated press release." (Compl. ¶¶ 157, 234, 245) Similarly, ISTNA alleges Defendants falsely represented that "Trelleborg" would enter into a new distribution agreement with ISTNA after the Asset Purchase. (*Id.* at ¶¶ 236, 246)

The foregoing statements are nonactionable as fraudulent or negligent misrepresentation. The terms of the Asset Purchase are not alleged to have been finalized at the time of the dinner, and so statements regarding whether all or some of IST Germany's assets would be purchased, whether ISTNA would be acquired as well, or whether the Exclusivity Agreement would be honored, were all statements of intent or expectation. (*See* Compl. at ¶ 144 (alleging dinner meeting occurred on August 10, 2022); 167 (alleging SAPA was signed on October 11, 2022)) The same is true of allegations relating to any request for business information of ISTNA in connection with the evaluation of potential acquisition of ISTNA. Just because ISTNA ultimately was not acquired does not render such statements fraudulent or otherwise actionable. At most, the allegedly false representations identified in the Complaint constitute "[m]ere unfulfilled

promissory statements as to what will be done in the future," which under New York law "are not actionable as fraud." *Brown*, 76 A.D.2d at 731.

For example, in *Naturopathic Labs. Intern., Inc. v. SSL Americas, Inc.*, the court held the plaintiff had "no cause of action for fraud" where the defendant represented to plaintiff it "would *envision* funding the proposed acquisition" and that financing "would be no problem" because of its size, which the court found to be "no more than statements of prediction or expectation, and as such [were] not actionable." 18 A.D.3d 404, 404 (1st Dep't 2005). Similarly, the purported representations of Messrs. Ljungback and Renulf were statements of expectation or prediction (because the terms of the APA had not yet been finalized) or intent (because the parties were merely exploring a potential acquisition of ISTNA). As such, ISTNA's fraud claims should be dismissed.[6]

## VI.    THE COMPLAINT FAILS TO STATE A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

Despite not asserting a claim for breach of fiduciary duty against IST Germany in the Arbitration (*see generally* Diakos Decl., Ex. B), ISTNA attempts to assert in this litigation a claim against Defendants for aiding and abetting purported breaches of fiduciary duties allegedly owed to ISTNA by IST Germany. ISTNA's aiding and abetting claim fails because IST Germany did not stand in a fiduciary relationship with ISTNA, and therefore ISTNA cannot plead an underlying breach of fiduciary duty as required to state a claim for aiding and abetting.  Further, the U.S. Defendants are not alleged to have had knowledge of purported fiduciary duties owed to ISTNA by IST Germany and/or substantially assisted such breaches.

The Complaint alleges that IST Germany owed fiduciary duties to ISTNA and Camali as ISTNA's "joint venturer," "business partner," and "exclusive supplier" under the Exclusivity

---

[6]    These claims should also be dismissed as duplicative and/or a mere repackaging of a claim for breach of the NDA, as discussed *supra*.

Agreement and that IST Germany breached its fiduciary duties by "duping" Camali into believing the Exclusivity Agreement would be honored after the Asset Purchase, and that the structure of the transaction would either be an investment in IST Germany or a "wholesale" purchase. (*Id.* at ¶¶ 253-54)  The Complaint also alleges IST Germany, in bad faith, increased prices for parts and equipment sold to ISTNA at the behest of "Trelleborg." (*Id.*)  ISTNA claims Defendants "induced" IST Germany's breaches by excluding the Exclusivity Agreement from the Asset Purchase and misrepresenting to Camali that the Exclusivity Agreement "would survive" the Asset Purchase. (*Id.* at ¶ 255)

Under New York law, a claim for aiding and abetting a breach of fiduciary duty requires a plaintiff to plead an underlying breach of a fiduciary obligation. *See Marino v. Grupo Mundial Tenedora, S.A.*, 810 F. Supp. 2d 601, 613 (S.D.N.Y. 2011).  Here, no such duty or obligation exists. There is nothing in the Exclusivity Agreement (or the MOU) that establishes IST Germany as a fiduciary or sets forth any fiduciary duties owed by IST Germany to ISTNA, and ISTNA does not allege otherwise.  As such, IST Germany and ISTNA were engaged in nothing more than an arm's-length business relationship. New York law is clear that "a fiduciary duty does not arise in the normal course of an arm's-length business transaction." *Lehman Bros. Com. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 150 (S.D.N.Y. 2000); *see also Oursler v. Women's Interart Ctr., Inc.*, 170 A.D.2d 407, 407 (1st Dep't 1991) ("[a] conventional business relationship, without more, does not become a fiduciary relationship by mere allegation").  Rather, a plaintiff must make a "showing of 'special circumstances' that could have transformed the parties' business relationship to a fiduciary one . . . such as control by one party of the other for the good of the other." *L. Magarian & Co., Inc. v. Timberland Co.*, 245 A.D.2d 69, 70 (1st Dep't 1997).

ISTNA has not alleged the sort of "special circumstances" that could give rise to any fiduciary duties on the part of IST Germany. In fact, New York courts routinely find that, except in except in "rare circumstances," exclusive distribution or supplier agreements do not create fiduciary duties. *See, e.g.*, *Ergowerx Intern., LLC v. Maxell Corp. of America*, 18 F. Supp. 3d 430, 452 (S.D.N.Y. 2014) ("arms-length relationship pursuant to a distribution agreement" between two business entities was "an ordinary commercial transaction [which] does not give rise to a fiduciary relationship"); *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, 2006 WL 6937123 at *20-21 (E.D.N.Y. July 10, 2006) (no fiduciary duty as a matter of law even though there was a long-term supply relationship between the parties, plaintiff earned 40% of its revenue from defendant, and plaintiff provided confidential information to defendant); *Furniture Consultants, Inc. v. Acme Steel Door Corp.*, 240 A.D.2d 180, 180 (1st Dep't 1997) (distributor's breach of fiduciary duty claim against manufacturer "was properly dismissed for failure to adduce facts showing that the parties' relationship was other than arm's length").

Because the Complaint does not plausibly allege that IST Germany owed any fiduciary duty or obligation to ISTNA, ISTNA cannot allege an underlying breach of any fiduciary duty and cannot state a claim for aiding and abetting against the U.S. Defendants. Even if it could, ISTNA has not alleged any facts demonstrating that the U.S. Defendants had knowledge of or substantially assisted IST Germany in breaching its fiduciary duties to ISTNA.

## VII.    ISTNA'S REQUEST FOR PUNITIVE DAMAGES SHOULD BE STRICKEN

The Court should strike ISTNA's request for punitive damages because the allegations in its Complaint are insufficient to support such extraordinary relief. Under New York law, "where there is a close nexus between the . . . [allegedly] tortious conduct and the contract from which it is said to arise, for example, where the contract was fraudulently induced or where a party engages in conduct outside the contract but intended to defeat the contract, punitive damages are

recoverable only where the culpable party's conduct was directed at the public." *Cerveceria Modelo, S.A. De C.V. v. USPA Accessories LLC*, 2008 WL 1710910, at *6-7 (S.D.N.Y. Apr. 10, 2008) (dismissing demand for punitive damages).

There is no question that there is a close nexus between the contracts from which each of ISTNA's claims arise, *i.e.*, the SAPA and the NDA, and the allegedly tortious conduct. ISTNA alleges that Defendants induced IST Germany's breach of the Exclusivity Agreement by entering into the SAPA, made allegedly false and misleading representations regarding the prospective terms of the SAPA, and aided and abetted IST Germany in breaching purported fiduciary duties owed to ISTNA by entering into the SAPA. "Therefore, [ISTNA] must demonstrate that [Defendants'] alleged tortious interference with contract [and other purportedly tortious conduct] was part of a practice directed at the public generally." *See Cerveceria Modelo*, 2008 WL 1710910 at 7. The Complaint does not contain any such allegations, and therefore its request for punitive damages should be dismissed or stricken from the Complaint. *See, e.g., Rocanova v. Equitable Life Assurance Soc'y of the U.S.,* 83 N.Y.2d 603, 613  (1994) ("[a] private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally"); *Rivas v. AmeriMed USA, Inc.,* 824 N.Y.S.2d 41, 43 (1st Dep't 2006) (dismissing punitive damages claim because plaintiffs failed to demonstrate that egregious tortious conduct was "part of a pattern of similar conduct directed at the public generally").

**CONCLUSION**

For the foregoing reasons, the U.S. Defendants respectfully request that the Complaint be dismissed in its entirety, with prejudice, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for such other and further relief as the Court may deem just and proper.

Dated: December 23, 2025              Respectfully submitted,

                                      /s/ Joanna A. Diakos
                                      Joanna A. Diakos
                                      K&L Gates LLP
                                      599 Lexington Avenue
                                      New York, New York 10022
                                      Tel.: (212) 536-3900
                                      Email: joanna.diakoskordalis@klgates.com

                                      *Attorneys for Defendants Trelleborg Pipe Seals Milford, Inc., Trelleborg Sealing Solutions US, Inc., Trelleborg Pipe Seals US, Inc., Trelleborg Corporation, and Cristoffer Ljungback*

## <u>WORD COUNT CERTIFICATION</u>

Pursuant to Local Civil Rule 7.1 of the United States District Courts for the Southern and Eastern Districts of New York, the undersigned hereby certifies that this Memorandum of Law contains 8746 words, exclusive of the caption, table of contents, table of authorities, signature block, and this certification.

The word count was determined using the word-count function of Microsoft Word.

<u>*/s/ Joanna A. Diakos*</u>