UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

I.S.T. NORTH AMERICA, LLC.,

      Plaintiff,

  -against-

TRELLEBORG PIPE SEALS MILFORD
INC., et al.,

      Defendants.

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   02/05/26
```

25-CV-8349 (VSB) (BCM)

**MEMORANDUM & ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff I.S.T. North America, LLC (ISTNA) brought this action against nine defendants, including six affiliated "Trelleborg" entities (the Entity Defendants or Trelleborg) and three Trelleborg executives (the Individual Defendants). *See* Compl. (Dkt. 1) at 1 & ¶¶ 2, 8, 39-48. ISTNA alleges that "the multinational Trelleborg conglomerate" engaged in "a calculated campaign of deception and corporate sabotage that destroyed ISTNA's business[.]" *Id*. ¶ 1. Specifically, according to plaintiff, defendants bought out ISTNA's joint venturer and principal supplier, non-party IST Germany, and then (after making false representations to plaintiff about their intentions) stripped it for assets, causing it to breach its exclusive supply contract with plaintiff and leaving it judgment-proof. *Id*. ¶¶ 3-4. Having thus hobbled plaintiff, defendants "moved into ISTNA's territory" (North America), where it used ISTNA's "confidential business plans" (obtained under the guise of a nondisclosure agreement) to compete directly against it, "claim[ing] ISTNA's assets and goodwill as their own." *Id*. ¶ 5.

Plaintiff recently obtained a $10 million arbitration award against IST Germany, Compl. ¶ 6, notwithstanding that IST Germany "filed for insolvency in Germany" on the eve of the hearing. *Id*. ¶ 206. In this Court, plaintiff states claims for tortious interference with contractual relations and prospective economic relations; fraudulent misrepresentation and concealment; negligent misrepresentation; and aiding and abetting breach of fiduciary duty. *Id*. ¶¶ 215-57.

Five of the defendants (the Domestic Defendants[1]) have appeared and filed a motion to dismiss. (Dkt. 32.) The other four defendants – Trelleborg AB; Trelleborg Sealing Profiles Germany GmbH (Trelleborg Germany); Andreas Renulf; and Simon Burke – have not appeared or answered, despite the fact that Trelleborg AB previously appeared, through its U.S. counsel, in a related "pre-action discovery" proceeding initiated by plaintiff in a New York state court.

Now before this Court is plaintiff's motion (Dkt. 28) for alternative service on Trelleborg AB, Renulf, and Burke (the Foreign Defendants[2]), supported by a memorandum of law (Pl. Mem.) (Dkt. 29) and the declaration of plaintiff's counsel Brandon M. Fierro (Fierro Decl.) (Dkt. 30), attaching various exhibits. Plaintiff proposes to serve all three Foreign Defendants in their home countries by registered mail and Federal Express. In addition, plaintiff proposes to serve Trelleborg AB by email through its U.S. counsel, and to serve Renulf and Burke by email directly. However, plaintiff does not disclose the postal or email addresses at which it plans to serve the two foreign individuals. Nor does it provide any facts from which this Court could determine that those foreign individuals' addresses are current and functional. For these reasons, among others, plaintiff's motion will be granted to Trelleborg AB but denied, without prejudice, as to Renulf and Burke.

## I.    BACKGROUND

ISTNA, which provides trenchless pipe repair services, was formed in 2019, originally as a joint venture between Eugene "Geno" Camali and IST Germany. Compl. ¶ 10. ISTNA is now a

---

[1] The Domestic Defendants are: Trelleborg Pipe Seals Milford Inc. (Trelleborg Milford); Trelleborg Sealing Solutions US, Inc. (Trelleborg Sealing US); Trelleborg Pipe Seals US, Inc. (Trelleborg Pipe Seals US); Trelleborg Corporation; and Christoffer Ljungback (a resident of New York and a director of Trelleborg Milford).

[2] Although plaintiff has sued four foreign defendants (including Trelleborg Germany), the parties use the term "Foreign Defendants" to refer only to the three defendants that plaintiff seeks leave to serve by alternative means: Trelleborg AB, Renulf, and Burke. The Court follows suit.

New York limited liability company headquartered in Tappan, New York, with Camali as its sole member. *Id.* ¶ 38. According to plaintiff, Trelleborg AB is a Swedish company headquartered in Trelleborg, Sweden, *id.* ¶ 43; Renulf is a Trelleborg executive and a resident of Sweden, *id.* ¶ 47; and Burke, who is also a Trelleborg executive, is a resident of the Netherlands. *Id.* ¶ 48.

Although plaintiff names six corporate entities as defendants, it alleges that they operate in a way that "makes it impossible for market participants, like ISTNA, to understand which part of the Trelleborg Group they are doing business with." Compl. ¶ 66. Plaintiff further alleges that "Trelleborg AB, including through its executives Burke and Renulf, dominated each of the other Entity Defendants such that each functioned as a mere instrumentality of Trelleborg AB, their parent." *Id.* ¶ 54.[3]

As part of the scheme alleged in the Complaint, plaintiff claims that Ljungback and Renulf "made misleading and outright false statements to Mr. Camali at a dinner in Piermont, New York on August 10, 2022[.]" Compl ¶ 19. These statements included that Trelleborg intended to leave IST Germany operational, "that Trelleborg also intended to purchase or invest in ISTNA," and "that Trelleborg would honor ISTNA's Exclusivity Agreement with IST Germany." *Id* ¶ 20. Additionally, "Renulf . . . dupe[d] Mr. Camali into sending [Trelleborg] ISTNA's confidential and proprietary business plans and projections, all under the auspices of a non-disclosure agreement." *Id.* ¶ 22. This information was later "used by Trelleborg to gain access to ISTNA's former customers in the United States and Canada." *Id.*; *see also id.* ¶¶ 89-93.

---

[3] In their pending motion to dismiss, the Domestic Defendants argue that they cannot be sued on an alter ego theory because "the Complaint does not contain enough well-pleaded facts to demonstrate such purported 'domination.'" *See* Def. Mem. in Supp. of Mot. to Dismiss (Dkt. 36) at 6.

Plaintiff alleges that defendants' plans culminated in an October 11, 2022 agreement – signed by Renulf – "in which Trelleborg purchased all of IST Germany's assets while specifically excluding the Exclusivity Agreement." Compl. ¶ 23. "By virtue of this agreement, Trelleborg effectively left IST Germany entirely unable to perform as ISTNA's exclusive supplier." *Id*. ¶ 24. Plaintiff alleges that defendants "knew that the Takeover would cause IST Germany to breach the Exclusivity Agreement," which would be "the death knell for ISTNA," and acted maliciously to bring about that precise result. *Id*. ¶ 26.

On June 23, 2025, at the conclusion of the arbitration against IST Germany, the tribunal found that plaintiff's erstwhile joint venturer and supplier "unequivocally breached and repudiated its contract with ISTNA as a result of Trelleborg AB . . . and its . . . affiliate's takeover of IST Germany," resulting in millions of dollars in damages. Pl. Mem. at 4; *see also* Compl. ¶¶ 25, 103, 209-14. It is not clear from the record before this Court whether plaintiff has been able to collect any portion of its arbitration award against IST Germany.

On July 2, 2024, while the arbitration with IST Germany was ongoing, ISTNA initiated a "pre-action discovery" proceeding in New York Supreme Court, Rockland County, against five of the Entity Defendants (Trelleborg Milford, Trelleborg Sealing US, Trelleborg Corporation, Trelleborg AB, and Trelleborg Germany) under Index No. 033783/2024 (the Rockland County Action). Pl. Mem. at 4; *see also* Fierro Decl. Ex. B (Petition in Rockland County Action). On May 1, 2025, the state court denied plaintiff's motion for alternative service on Trelleborg AB and Trelleborg Germany as "improper at this time." Order (Doc. 53), Rockland County Action, at 3 (May 1, 2025). After plaintiff served Trelleborg AB via the Hague Convention – a process that took ten months – Trelleborg AB appeared in the Rockland County Action, *see* Not. of Appearance (Doc. 61), Rockland County Action (July 23, 2025), and contested it (alongside the

three Domestic Defendants named therein, which had already appeared). *See* Trelleborg AB Mem. in Opp. (Doc. 62), Rockland County Action (July 23, 2025).[4]

On October 8, 2025, plaintiff filed the present action. On October 17, 2025, Trelleborg AB submitted a letter to the state court attaching ISTNA's federal complaint and arguing that it rendered the state court action "moot." Fierro Decl. Ex. D. On December 1, 2025, the parties to the Rockland County Action voluntarily discontinued it. *See* Stipulation of Discontinuance (Doc. 70), Rockland County Action (Dec. 1, 2025).

On October 24, 2025, all five Domestic Defendants waived service in this federal action. (Dkts. 22-26.) But Trelleborg AB has not appeared in this Court, and BakerHostetler – the law firm that represented Trelleborg AB in Rockland County – advised plaintiff on October 23, 2025 that it was "not authorized to accept service on behalf of any Defendant in the SDNY action." Fierro Decl. Ex. F, at ECF p. 2.

On November 4, 2025, the Honorable Vernon S. Broderick, United States District Judge, referred the case to me for general pretrial management (Dkt. 27), and on November 26, 2025, plaintiff filed its motion for alternative service. Plaintiff argues that all three Foreign Defendants are "well aware of this lawsuit and ISTNA's claims against them," Pl. Mem. at 1, noting that Trelleborg AB actually submitted a copy of ISTNA's federal complaint in the Rockland County Action. *Id*. at 2. Plaintiff seeks to serve process on Trelleborg AB, Renulf, and Burke "through Federal Express (or another international courier) and registered mail." *Id*. at 6. Additionally, it proposes to serve them "via email through Trelleborg AB's attorneys at BakerHostetler and directly on the individual Foreign Defendants." *Id*.

To date, no opposition papers have been filed.

---

[4] Neither Renulf nor Burke was named as a respondent in the Rockland County Action.

## II.    STANDARDS

"The Federal Rules of Civil Procedure permit service on individuals outside of the United States by three methods." *CKR Law LLP v. Anderson Invs. Int'l, LLC*, 525 F. Supp. 3d 518, 523 (S.D.N.Y. 2021). The first is "any internationally agreed means of service," Fed. R. Civ. P. 4(f)(1), for example, pursuant to the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 (the Hague Service Convention), 20 U.S.T. 361, T.I.A.S. No. 6638 (Feb. 10, 1969). The second, where permitted by international agreement, is to follow the foreign country's law or the directions of a foreign authority; or, if permitted by that country's law, to use in-person service or service by mail. Fed. R. Civ. P. 4(f)(2). The third method is any "other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). Service may be made on a foreign corporation "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery." Fed. R. Civ. P. 4(h)(2).

Assuming that the proposed means of alternative service under Rule 4(f)(3) is "prohibited neither by federal law nor by national agreement, the Court may exercise its discretion to permit such service," *CKR*, 525 F. Supp. 3d at 524, so long as the method proposed "comports with constitutional notions of due process." *S.E.C. v. Anticevic*, 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009). "Constitutional notions of due process require that any means of service be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id*. (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)); *accord CKR*, 525 F. Supp. 3d at 524-25; *Wei Su v. Sotheby's, Inc.*, 2018 WL 4804675, at *3 (S.D.N.Y. Oct. 3, 2018).

There is no requirement that a plaintiff "attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3)." *Anticevic*, 2009 WL 361739, at *4 (collecting cases). Nonetheless, in determining whether to exercise their discretion to permit alternative service, "district courts in this Circuit have generally required: (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *Wei Su*, 2018 WL 4804675, at *3 (quoting *U.S. v. Leb. Can. Bank SAL*, 285 F.R.D. 262, 267 (S.D.N.Y. 2012)); *see also Carrillo v. Sabbadini,* 2025 WL 304446, at *1 (S.D.N.Y. Jan. 27, 2025) (Broderick, J.) ("Although service under Rule 4(f)(3) is not considered a last resort, some courts have required a plaintiff seeking service under Rule 4(f)(3) to have already reasonably attempted to serve the defendant."). This approach, "although not expressly provided by Rule 4(f)(3), 'is necessary in order to prevent parties from whimsically seeking alternate means of service and thereby increasing the workload of the courts.'" *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115-16 (S.D.N.Y. 2010) (quoting *Ryan v. Brunswick Corp.*, 2002 WL 1628933, at *2 (W.D.N.Y. May 31, 2002)).

Most courts in our Circuit agree that "service on a defendant located abroad via U.S.-based counsel is permitted under the text of Rule 4(f)(3)." *United States v. Mrvic*, 652 F. Supp. 3d 409, 412 (S.D.N.Y. 2023) (collecting cases). However, the Second Circuit has not addressed the question, and "[s]ome courts have found that service through counsel in the United States is not permissible under Rule 4(f)(3) because the text of Rule 4(f)(3) provides for alternate service 'at a place not within any judicial district of the United States.'" *Id*.; *see, e.g.*, *Convergen Energy LLC v. Brooks*, 2020 WL 4038353, at *7-9 (S.D.N.Y. July 17, 2020) (collecting cases disallowing Rule 4(f)(3) service through domestic counsel). In my view, service through U.S.-

7

based counsel is permissible under Rule 4(f)(3) because "the relevant circumstance is where the defendant is, and not the location of the intermediary." *Wash. State Inv. Bd. v. Odebrecht, S.A.*, 2018 WL 6253877, at *4 (S.D.N.Y. Sept. 21, 2018); *accord Vega v. Hastens Beds, Inc.*, 342 F.R.D. 61, 65-66 (S.D.N.Y. 2022) (*Vega II*). Courts that have approved service on a foreign defendant's domestic counsel often note that "the relevant attorneys were unlikely to disregard receipt of service of process because they were already representing the defendant in the relevant cases, otherwise had knowledge of the underlying facts of the case in which service was attempted, . . . or had a special relationship with the defendant[.]" *AMTO, LLC v. Bedford Asset Mgmt., LLC*, 2015 WL 3457452, at *6 (S.D.N.Y. June 1, 2015) (collecting cases).

## III.    ANALYSIS

### A.    Trelleborg AB

#### 1.    International Agreements

I first consider whether service by Federal Express or other international courier, and by registered mail to Trelleborg AB, a Swedish company, is "prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). Sweden, like the United States, is a party to the Hague Service Convention. *See Vega v. Hastens Beds, Inc.*, 339 F.R.D. 216 (S.D.N.Y. 2021) (*Vega I*); Fierro Decl. Ex. E (Hague Service Convention Status Table), at ECF p. 5.

The purpose of the Hague Service Convention "is to simplify, standardize, and generally improve the process of serving documents abroad." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017). To that end, the Convention "specifies certain approved methods of service and pre-empts inconsistent methods of service whenever it applies." *Id.* (internal quotation marks and citations omitted). Under Article 10, absent "objections" from the state of destination, the convention "does not interfere" with: "the freedom to send judicial documents by postal

8

channels, directly to persons abroad[.]" Hague Serv. Conv. Art. 10(a). Thus, the Convention does not prohibit service by mail (or international courier),[5] so long as "the receiving [foreign] state does not object." *Vega II*, 342 F.R.D. at 64 (quoting *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 300 (2d Cir. 2005)).

"Sweden has indicated its lack of opposition to Article 10(a)." *Alnasser v. Serdy*, 2024 WL 4710161, at *3 (M.D. Fla. Nov. 7, 2024); *see also* Hague Conference on Private and International Law, *Decleration/Reservation/Notification (Sweden)*, https://perma.cc/CZ7L-X7WG (all websites last visited Feb. 5, 2026). Moreover, no party to this action has suggested that Sweden is a party to any other international agreement that prohibits service by registered mail or international courier. I therefore find that service by registered mail and Federal Express on Trelleborg AB is not prohibited.

Plaintiff also proposes to serve the Summons and Complaint via email to Trelleborg AB's U.S.-based counsel; that is, the attorneys who represented it in the Rockland County Action. Those attorneys work in BakerHostetler's New York City office. *See* Fierro Decl. Exs. D, F. As this method "will not require transmittal of any documents abroad," it "will not be subject to the [Hague Service] Convention." *Giuffre v. Andrew*, 560 F. Supp. 3d 744, 746 (S.D.N.Y. 2021); *accord Uipath, Inc. v. Shanghai Yunkuo Info. Tech. Co.*, 2023 WL 8600547, at *3 (S.D.N.Y. Dec. 12, 2023) ("The convention does not apply to service . . . on a foreign party's counsel in the United States" since "[w]hatever internal, private communications take place between the [domestic] agent and a foreign principal are beyond the concerns' of the convention.") (quoting

---

[5] *See Bidonthecity.com LLC v. Halverston Holdings Ltd.*, 2014 WL 1331046, at *8 (S.D.N.Y. Mar. 31, 2014) (Federal Express is a "postal channel"); *AMTO*, 2015 WL 3457452, at *10 (same) (collecting cases); *cf. Vega I*, 339 F.R.D. at 220 (using a "private person" to deliver judicial documents to a letter-box in Sweden is not a "postal channel"); *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 343 (E.D.N.Y. 2021) ("Courts in the Second Circuit have generally found that email is not a postal channel[.]") (collecting cases).

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988)); *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 278-79 (S.D.N.Y. 2013) ("Substitute service on a U.S. entity does not trigger the requirements of the Hague Convention."). I therefore conclude that none of plaintiff's proposed alternative methods of service on Trelleborg AB is prohibited by international agreement.

### 2.    Due Process

I next consider whether the proposed service on Trelleborg AB comports with due process. I find that it does. Service through registered mail and Federal Express satisfies due process "when the mail is reasonably likely to be received by the recipient at the address it is sent to, or when it is actually marked as delivered." *W.J. Deutsch & Sons Ltd. v. Zamora*, 2023 WL 5609205, at *7 (S.D.N.Y. Aug. 30, 2023); *see also Fuentes-Argueta v. I.N.S.*, 101 F.3d 867, 872 (2d Cir. 1996) ("[C]ourts have repeatedly upheld even the use of regular, first-class mail as a constitutionally adequate means of service.") Plaintiff has a confirmed address for Trelleborg AB, which was used as recently as June 23, 2025, when service was successfully completed on the company through the Hague Service Convention in the Rockland County Action.[6] Thus, service by registered mail and Federal Express to that same address is "reasonably calculated, under all the circumstances, to apprise" Trelleborg AB of this action. *Lewis v. Madej*, 2015 WL 6442255, at *11 (S.D.N.Y. Oct. 23, 2015) (citation omitted).

Additionally, simultaneous service on Trelleborg AB "through [its] American lawyer satisfies due process" where, as here, "there has been 'adequate communication between the foreign defendant and counsel,'" such that "service on counsel is reasonably 'likely to apprise

---

[6] Service was accomplished through delivery of the judicial documents to Trelleborg AB at "Box 153, 231 22 Trelleborg." Fierro Decl. ¶¶ 9-11 & Ex. C, at ECF pp. 4-5. This is consistent with the address provided on Trelleborg's website: "Trelleborg AB, Johan Kocksgatan 10, P.O. Box 153, SE-231 22 Trelleborg." *See* Trelleborg, https://perma.cc/39SW-GGFU.

defendants of the action.'" *W.J. Deutsch & Sons*, 2023 WL 5609205, at *8 (quoting *Madu, Edozie & Madu*, 265 F.R.D. at 119). As plaintiff points out, "ISTNA's counsel has already corresponded with Trelleborg AB's BakerHostetler attorneys via email in connection with this matter." Pl. Mem. at 9. Not only did BakerHostetler act as Trelleborg AB's counsel (until at least December 1, 2025) in the Rockford County Action; on October 17, 2025, while that representation was ongoing, a BakerHostetler lawyer agreed to "reach out" to "our client" to determine whether the firm could accept service on its behalf in this case. Fierro Decl. Ex. F, at ECF pp. 3-4. That same day, on behalf of Trelleborg AB, BakerHostetler submitted a copy of ISTNA's federal complaint to the state court. *Id*. Ex. D. A few days later (presumably after receiving instructions from its client), BakerHostetler advised, by email, that it would not accept service of process for Trelleborg AB in this action. *Id*. Ex. F, at ECF p. 2.

It is hard to imagine a clearer set of circumstances showing that Trelleborg AB maintains "adequate communication" with its U.S. counsel, such that service on counsel is "'reasonably 'likely to apprise defendant[] of the action.'" *W.J. Deutsch & Sons*, 2023 WL 5609205, at *8. Indeed, A.B. Trelleborg is – almost certainly – already "apprised" of this action, both through BakerHostetler and through its General Counsel, Katarina Olsson, who signed the service receipt on Trelleborg AB's behalf in the Rockland County Action and who is also "the president of Trelleborg Corporation, one of the US Defendants that waived service in this action." Pl. Mem. at 5; Fierro Decl. ¶¶ 10-12 & Ex. C, at ECF p. 5; *see also*, *e.g.*, *Washington State Inv. Bd. v. Odebrecht S.A.*, 2018 WL 6253877, at *5 (S.D.N.Y. Sept. 21, 2018) (approving service via U.S. counsel where the law firm previously "represented [defendant] in a related criminal case" and also "represented [defendant] in a recent securities fraud class action in this district"); *Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013) (approving service on Baidu's U.S. law

11

firm, which "has been representing it continuously in this action for roughly nine months," albeit only "to contest service of process"). BakerHostetler's statement that it was not "authorized" to accept service of the federal complaint on behalf of Trelleborg AB, *see* Fierro Decl. Ex. F, at ECF p. 2, required plaintiff to serve by other means (or to obtain a Rule 4(f)(3) order), but does not affect this Court's due process analysis. *See Giuffre*, 560 F. Supp. 3d at 746 (concluding that service on a foreign defendant's U.S. counsel would give notice of the action to the defendant as required, "regardless of whether [defendant's] U.S. counsel is 'authorized' to accept service on his behalf"); *RSM Prod. Corp. v. Fridman*, 2007 WL 2295907, at *6 (S.D.N.Y. Aug. 10, 2007) ("Court-ordered service on counsel made under Rule 4(f)(3) serves as effective authorization 'by law' for counsel to receive service."). I therefore find that due process is satisfied by all of plaintiff's proposed methods of alternative service on Trelleborg AB.

### 3.    Discretionary Factors

Finally, I consider whether plaintiff has made reasonable efforts to effect service on Trelleborg AB using traditional means, thus warranting the Court's exercise of discretion under Rule 4(f)(3). Given the posture of this action, I am satisfied that ISTNA is not "whimsically seeking alternate means of service" so as to unnecessarily increase the workload of the courts. *Madu, Edozie & Madu*, 265 F.R.D. at 115-16.

In the Rockland County Action, plaintiff served Trelleborg AB through the Hague Service Convention. This required plaintiff to retain "a company specializing in the service of civil process in foreign countries." Fierro Decl. ¶ 7. Then, after the necessary documents were submitted to Sweden's Central Authority, plaintiff waited ten months for service to be completed. *Id*. ¶¶ 8-9. Once it was served, Trelleborg AB appeared (through counsel) and participated in the Rockland County Action. However, the moment this action was filed, Trelleborg AB

12

simultaneously (a) relied on a copy of the federal complaint to seek the dismissal of the Rockland County Action as moot, but (b) refused to authorize its U.S. counsel to accept service of that complaint in this case. It is difficult to explain these actions as anything other than an effort to delay service while maximizing plaintiff's costs. I see no reason why this Court should reward that effort. *See Long v. MTN Grp. Ltd.*, 2024 WL 4664619, at *6 (E.D.N.Y. Sept. 30, 2024) (finding that plaintiff's "recent attempts to serve the same defendants . . . in [an] analogous case[] and on substantially similar grounds" supported the court's exercise of discretion under Rule 4(f)(3), and authorizing alternative service).[7]

### B.    Renulf and Burke

#### 1.    International Agreements

Plaintiff proposes to serve the individual Foreign Defendants, Renulf and Burke, via registered mail, international courier, and email. Pl. Mem. at 6. Renulf is alleged to reside in Sweden. Compl. ¶ 47; Pl. Mem. at 8. If so, service upon him by "postal channels," including registered mail and Federal Express, is not "prohibited by international agreement," Fed. R. Civ. P. 4(f)(3), for the same reasons discussed above in connection with Trelleborg AB.

Burke is alleged to be a resident of the Netherlands, Compl. ¶ 48; Pl. Mot. at 8, which is also a party to the Hague Service Convention. *See* Hague Service Convention Status Table at ECF p. 4. Moreover, like Sweden, the Netherlands "does not object to Article 10(a), and, thus, does not prevent service [on] defendants by postal channels." *Kremer v. Webador.com*, 2025 WL 2492476, at *3 (M.D. Tenn. July 29, 2025) (collecting cases), *adopted*, 2026 WL 19411 (M.D.

---

[7] Even if Trelleborg AB were not intentionally seeking to delay service, the prospect of another ten-month wait to serve under the Hague Service Convention could justify judicial intervention. "Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)." *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) (collecting cases).

Tenn. Jan. 2, 2026); *see also* Hague Conference on Private and International Law, *Decleration/ Reservation/Notification (Netherlands)*, https://perma.cc/W2B4-BBGX. Moreover, no party to this action has suggested that the Netherlands is a party to any other international agreement that prohibits service by registered mail or international courier. I therefore find that service by registered mail and Federal Express on Burke is not prohibited.

Plaintiff also seeks Court approval for alternative service by email directly to Renulf and Burke (presumably in Sweden and the Netherlands, respectively). Pl. Mot. at 6.[8] As noted above, email is not a "postal channel" as that term is used in Article 10(a) of the Hague Service Convention. *Grp. One Ltd.*, 523 F. Supp. 3d at 343; *accord Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 332 (S.D.N.Y. 2015). These cases reasoned that *because* email is not a postal channel, "service by email *is* authorized if the signatory country has not explicitly objected to service by electronic means." *Grp. One Ltd.*, 523 F. Supp. 3d at 343 (emphasis added); *see also Sulzer Mixpac*, 312 F.R.D. at 332 (holding that "China's objection to service by postal mail does not cover service by email," and therefore that the Hague Service Convention did not "prohibit" alternative service by email to a Chinese defendant pursuant to Rule 4(f)(3)).

However, the Second Circuit recently rejected that logic, explaining that since "the Convention 'pre-empts inconsistent methods of service wherever it applies,'" and since "[e]mail service is one such 'inconsistent method[]' pre-empted by the Convention," "email service on Chinese defendants is prohibited by the Hague Service Convention, and thus improper under Rule 4(f)(3)." *Smart Study Co., Ltd v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164, 171-72 (2d Cir. 2025) (quoting *Water Splash*, 581 U.S. at 273) (alterations in original). By the same

---

[8] Plaintiff does not contend that BakerHostetler represents Renulf and Burke as individuals, and does not seek leave to serve them via email to BakerHostetler. *See, e.g.*, Pl. Mot. at 6 (distinguishing between service via email on Trelleborg AG "through Trelleborg AB's attorneys at BakerHostetler" and service via email "directly on the individual Foreign Defendants").

token, email service on defendants in Sweden and the Netherlands must now be viewed as "prohibited by the Hague Service Convention, and thus improper under Rule 4(f)(3)." *Id.*[9]

### 2.    Due Process

Even if none of the three methods of alternative service proposed by plaintiff for the individual Foreign Defendants was "prohibited by international agreement," Fed. R. Civ. P. 4(f)(3), I could not authorize the requested service, because plaintiff has not shown that it would comport with due process. Plaintiff asserts that it "is in possession of email addresses for the individual Foreign Defendants by virtue of discovery obtained in the Arbitration." Pl. Mot. at 9. But it does not disclose those email addresses to the Court; does not assert that it has recently (or ever) used them to correspond with Renulf or Burke; and does not provide any other facts from which the Court could conclude that they are currently used (or even monitored) by the individual Foreign Defendants.

In virtually every case "where service by email has been judicially approved, the movant supplied the Court with some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address." *Fortunato v. Chase Bank USA, N.A.*, 2012 WL 2086950, at *2 (S.D.N.Y. June 7, 2012). Conversely, where those facts are not

---

[9] In *Smart Study*, the foreign defendant resided in China, which has objected to Article 10(a) of the Hague Service Convention. 164 F.4th at 170. However, I do not read the result in *Smart Study* as turning on that fact. Rather, as the Court of Appeals explained, email service is "inconsistent" with service through "postal channels" (as authorized by Article 10(a)), and therefore must be viewed as "pre-empt[ed]" by the Convention "wherever it applies." *Id*. at 171. The Convention applies in both Sweden and the Netherlands. Moreover, by simultaneously seeking authorization to serve Renulf and Burke by registered mail and Federal Express, plaintiff implicitly asserts that their physical addresses are "known," such that it cannot invoke the exception set forth in Article 1. *See* Hague Serv. Conv. Art. 1 ("This Convention shall not apply where the address of the person to be served with the document is not known."). Therefore, regardless of whether Sweden or the Netherlands objected to the methods set forth in Article 10(a), email service on defendants within those countries "is prohibited by the Hague Service Convention, and thus improper under Rule 4(f)(3)." *Smart Study*, 164 F.4th at 172.

supplied, courts properly decline to authorize email service under Rule 4(f)(3), because they cannot conclude that such service is "reasonably calculated" to give actual notice to the intended recipients, as required by *Mullane. See, e.g.*, *CKR*, 525 F. Supp. 3d at 525 n.1 (declining to approve email service where "[p]etitioner provide[d] no additional information regarding" a particular email address, such that "[s]ervice through this email address . . . would not be reasonably calculated to apprise Rach of the action"); *Fortunato,* 2012 WL 2086950, at *2 (S.D.N.Y. June 7, 2012) (declining to approve email service where "Chase has not set forth any facts that would give the Court a degree of certainty that . . . the email address listed on the Facebook profile is operational and accessed by Nicole"). Here, as in *Fortunato*, plaintiff has not provided any facts that would give this Court "a degree of certainty" that the (undisclosed) email addresses it proposes to use are "operational" and "accessed by" Renulf and Burke.

Similarly, although plaintiff seeks leave to serve Renulf and Burke by registered mail and Federal Express, it does not provide the addresses that it intends to use for these purposes, much less explain how it obtained those addresses or why it believes that documents sent to them are likely to reach the individual Foreign Defendants. *Cf.* Fierro Decl. Ex. A, at ECF pp. 57, 59 (summonses for Renulf and Burke listing only their names, with no addresses). To be sure, many courts have "sensibly held that service on a high-level employee's corporate employer, or counsel for that employer, is 'reasonably calculated' to apprise the employee of the pendency of the action and therefore comports with due process." *Stream SICAV*, 989 F. Supp. 2d at 279 (collecting cases). Here too, however, plaintiff's motion papers fall short. In its Complaint, plaintiff provides detailed allegations regarding the work that Renulf and Burke performed on behalf of the Entity Defendants through approximately 2023. *See, e.g*., Compl. ¶¶ 90-92, 142-45, 151-52, 154-61, 164, 166, 185-86. Nowhere, however, does plaintiff provide any evidence

showing that the two individual Foreign Defendants are *currently* employed by one or more of the Entity Defendants, much less evidence identifying their current employer(s) or work locations.[10] I therefore cannot conclude that plaintiff has met its burden to show that the proposed modes of alternative service are "reasonably calculated, under all the circumstances, to apprise [Renulf and Burke] of the pendency of the action." *CKR*, 525 F. Supp. 3d at 524-25.

### 3.    Discretionary Factors

Even if this Court could lawfully authorize the requested alternative service on Renulf and Burke, the discretionary factors would weigh against plaintiff's request. First, unlike Trelleborg AB, neither Renulf nor Burke was a party to the Rockland County Action. There is thus no corresponding history of service attempts by plaintiff as to these two individuals (under the Hague Service Convention or otherwise). Indeed, insofar as the record reflects, plaintiff's *only* effort to effect service on the individual Foreign Defendants before filing the present motion was its October 15, 2025 email to the attorneys who represented the Entity Defendants in the Rockland County Action, asking if they would "accept service of the attached complaint on behalf of any of the named defendants." Fierro Decl. Ex. F, at ECF p. 5.

Plaintiff alleges that Telleborg is a "multinational . . . conglomerate." Compl. ¶14. According to its website, it has 8,500 employees. *See* Trelleborg, *About Trelleborg Sealing Solutions*, https://perma.cc/T3UF-RWWA. While Renulf and Burke may have played a role in the underlying events, this does not necessarily mean that they were involved in the Rockland County Action as non-parties, much less that they became aware of this action through their involvement in that case (or otherwise). Likewise, this Court has no reason to believe that they (unlike Trelleborg AB) affirmatively instructed any U.S.-based lawyers not to accept service of

---

[10] In their motion to dismiss, the Domestic Defendants neither confirm nor deny that Renulf and Burke are still employed by any of the Entity Defendants. *See* Def. Mem. in Supp. of Mot. to Dismiss at 1.

process in this action on their behalf. In short, plaintiff has not shown that it has "reasonably attempted to effectuate service on the[se] defendant[s]," that they are intentionally evading service, or that "the circumstances are such that the court's intervention is necessary" for any other reason. *Wei Su*, 2018 WL 4804675, at *3.

## IV.    CONCLUSION

For these reasons, plaintiff's alternative service motion (Dkt. 28) is hereby GRANTED IN PART, as to defendant Trelleborg AB only. Plaintiff may serve Trelleborg AB by registered mail and Federal Express, addressed to Trelleborg AB, Johan Kocksgatan 10, P.O. Box 153, SE-231 22 Trelleborg, Sweden, and by email addressed to its U.S.-based counsel in the Rockland County Action, using the email addresses that counsel used in that action or (if different), the email addresses that are currently listed for them on the BakerHostetler website. Plaintiff must complete such service, and file proof upon the docket, within thirty days of today's date.

Dated:  New York, New York          SO ORDERED.
        February 5, 2026

_____
**BARBARA MOSES**
**United States Magistrate Judge**

18