**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

I.S.T. NORTH AMERICA, LLC,

Plaintiff,

-against-

TRELLEBORG PIPE SEALS MILFORD INC., TRELLEBORG SEALING SOLUTIONS US INC., TRELLEBORG PIPE SEALS US, INC., TRELLEBORG CORPORATION, TRELLEBORG AB, TRELLEBORG SEALING PROFILES GMBH, CRISTOFFER LJUNGBACK, ANDREAS RENULF, SIMON BURKE, JOHN DOE 1-10, and XYZ COMPANIES 1-10,

Defendants.

-------------------------------------------------------------------x

Civil Action No. 1:25-cv-08349-VSB-BCM

**Oral Argument Requested**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TRELLEBORG AB'S MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE, TO COMPEL ARBITRATION**

**BAKER & HOSTETLER LLP**

Jonathan D. Pressment
Maximillian S. Shifrin
45 Rockefeller Plaza
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
jpressment@bakerlaw.com
mshifrin@bakerlaw.com

*Attorneys for Defendant Trelleborg AB*

# TABLE OF CONTENTS


**Page**

PRELIMINARY STATEMENT ....................................................................................1

SUMMARY OF ALLEGATIONS AND SWORN FACTS ..........................................................3

A. ISTNA's Business and the Exclusivity Agreement. ...............................................3

B. IST Germany's Financial Issues and the Sale of its Assets to Trelleborg Germany..........................................................................................4

C. Defendants' Corporate Separateness, ISTNA's False Allegations of Executive Overlap, and Trelleborg AB's Lack of Independent Contacts With New York..........................................................................................5

ARGUMENT ..................................................................................................6

I. THE CLAIMS AGAINST TRELLEBORG AB SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.........................................................6

A. The Court Does Not Have General Jurisdiction Over Trelleborg AB.....................6

B. The Court Does Not Have Specific Jurisdiction Over Trelleborg AB ....................7

1. Trelleborg AB Did Not "Transact Business" in New York.........................7

2. Trelleborg AB Did Not Commit a "Tortious Act" in New York ................9

3. Trelleborg AB Did Not Commit a Tortious Act that Caused Injury Within New York..........................................................................11

C. ISTNA's Alter-Ego Theory of Jurisdiction Fails as a Matter of Law ...................12

1. The Complaint Fails to Allege Any Non-Conclusory Failures of Corporate Formalities, Undercapitalization, or Intermingling of Funds ...13

2. Allegations of Shared Branding, Executives, and Office Constitute Insufficient "Superficial Indicia" that Trelleborg AB is an Alter Ego ......13

3. ISTNA Has Not Alleged That the Corporate Form Was Used to Commit a Wrong...........................................................................14

D. Exercising Jurisdiction Over Trelleborg AB Would Violate Due Process...........15

II. IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED ON FORUM NON CONVENIENS GROUNDS...................................................15

III. EVEN IF JURISDICTION EXISTS, THE CLAIMS AGAINST TRELLEBORG AB MUST BE ARBITRATED IN SWEDEN ....16

IV. THE COMPLAINT INDEPENDENTLY FAILS TO STATE A CLAIM AGAINST TRELLEBORG AB ....18

A. The Complaint Fails to Plead Any Actionable Conduct by Trelleborg AB ....19

B. ISTNA's Claims Attempt to Repackage a Contractual Dispute as Tort Claims ....20

C. Each Claim Independently Fails as to Trelleborg AB ....21

1. The Misrepresentation Claims Fail Against Trelleborg AB ....21

a. ISTNA's Fraudulent Misrepresentation and Concealment Claim Fails. ....21

b. ISTNA's Negligent Misrepresentation Claim Fails. ....23

d. The Aiding and Abetting a Breach of Fiduciary Duty Claim Fails ....27

CONCLUSION ....28

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*,
No. 12 Civ. 4828 (KPF), 2018 WL 1273343 (S.D.N.Y. Mar. 5, 2018) .................................. 20

*Aquiline Capital Partners LLC v. Finarch LLC*,
861 F. Supp. 2d 378 (S.D.N.Y. 2012) ........................................................................ 8

*Arciniaga v. Gen. Motors Corp.*,
460 F.3d 231 (2d Cir. 2006) ....................................................................................... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................. 18, 19

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) .................................................................................... 19

*Aybar v. Aybar*,
37 N.Y.3d 274 (2021) ................................................................................................... 7

*Ballon Stoll P.C. v. Cutler*,
No. 23-cv-00366 (ER), 2024 WL 1256049 (S.D.N.Y. Mar. 25, 2024) ..................................... 7

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
171 F.3d 779 (2d Cir. 1999) ....................................................................................... 11

*Barrett v. Tema Development (1988), Inc.*,
463 F. Supp. 2d 423 (S.D.N.Y. 2006) ......................................................................... 9

*Bd. of Managers of Gansevoort Condo. v. 325 W. 13th, LLC*,
121 A.D.3d 554 (1st Dep't 2014) ................................................................................ 14

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................................... 18

*Caplan v. Dollinger*,
803 F. Supp. 3d 219 (S.D.N.Y. 2025) ...................................................................... 12, 13, 14

*Carvel Corp. v. Noonan*,
3 N.Y.3d 182 (2004) ................................................................................................... 26

*Catskill Dev., L.L.C. v. Park Place Ent. Corp.*,
547 F.3d 115 (2d Cir. 2008) ....................................................................................... 26

*CesFin Ventures LLC v. Al Ghaith Holding Co. PJSC*,
No. 21-CV-1395 (PGG) (SDA), 2022 WL 18859076 (S.D.N.Y. Dec. 10, 2022)............... 12, 14

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
58 F.3d 16 (2d Cir. 1995) ............................................................................................ 17

*Compagnie des Grands Hotels d'Afrique S.A. v. Starwood Cap. Grp. Glob. I LLC*,
No. 23-2631, 2024 WL 4249723 (3d Cir. 2024)........................................................... 20

*Converged Compliance Solutions, Inc. v. XOP Networks, Inc.,*
No. 21-CV-5482 (PGG) (OTW), 2024 WL 4665114 (S.D.N.Y. Sept. 25, 2024).................... 21

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ................................................................................................ 6, 7

*DeLorenzo v. Viceroy Hotel Grp.*, LLC,
757 Fed. App'x 6 (2d Cir. 2018) ...................................................................................... 6

*Desarrolladora La Ribera v. Anderson*,
No. 24-CV-67 (LAK) (BCM), 2024 WL 5186600 (S.D.N.Y. Dec. 20, 2024) ......................... 18

*DM Manager LLC v. Fid. Nat'l Info. Servs., Inc.*,
No. 23-CV-00617 (ER), 2024 WL 1347724 (S.D.N.Y. Mar. 29, 2024)................................. 23

*Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*,
783 F.3d 395 (2d Cir. 2015) ......................................................................................... 21

*Fonar Corp. v. Magnetic Resonance Plus, Inc.*,
957 F. Supp. 477 (S.D.N.Y. 1997) .................................................................................. 27

*Greentech Rsch. LLC v. Wissman*,
104 A.D.3d 540 (1st Dep't 2013)..................................................................................... 23

*Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.*,
206 F. Supp. 3d 869 (S.D.N.Y. 2016) ........................................................................ 26, 27

*Helio Logistics, Inc. v. Mehta,*
No. 22-cv-10047 (NSR), 2023 WL 21887 (S.D.N.Y. Jan. 3, 2023) ........................................ 12

*Henneberry v. Sumitomo Corp. of Am.*,
415 F. Supp. 2d 423 (S.D.N.Y. 2006) ............................................................................... 26

*High Falls Brewing Co., LLC.*,
852 F. Supp. 2d 306 (W.D.N.Y. 2011).............................................................................. 24

*IMG Fragrance Brands, LLC v. Houbigant, Inc.*,
679 F. Supp. 2d 395 (S.D.N.Y. 2009) .......... 25

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
529 F. Supp. 3d 111 (S.D.N.Y. 2021) .......... 6, 8, 19

*In re Alcon Shareholder Litig.*,
719 F. Supp. 2d 263 (S.D.N.Y. 2010) .......... 15, 16

*In re All Year Holdings Ltd.*,
648 B.R. 434 (Bankr. S.D.N.Y. 2022).......... 14

*In re SSA Bonds Antitrust Litig.*,
420 F. Supp. 3d 219 (S.D.N.Y. 2019) .......... 9

*JLM Indus., Inc. v. Stolt–Nielsen SA*,
387 F.3d 163 (2d Cir. 2004) .......... 18

*Jonas v. Est. of Leven*,
116 F. Supp. 3d 314 (S.D.N.Y. 2015) .......... 3

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
No. 16-CV-1318 (GBD) (BCM), 2018 WL 4681616 (S.D.N.Y. Sept. 4, 2018).......... 8

*Kelly v. Beliv LLC*,
640 F. Supp. 3d 286 (S.D.N.Y. 2022) .......... 10

*Kingstown Cap. Mgmt., L.P. v. Vitek*,
No. 20-3406, 2022 WL 3970920 (2d Cir. 2022) .......... 16

*Long Side Ventures LLC v. Hempacco Co*., Inc.,
No. 22-cv-08152 (ALC), 2023 WL 6386888 (S.D.N.Y. Sept. 29, 2023) .......... 13

*Marcus v. Archer*,
No. 19-CV-7099 (JPO), 2020 WL 4937353 (S.D.N.Y. Aug. 24, 2020) .......... 6

*Mehmet v. Gautier*,
No. 18-CV-9090 (VSB), 2019 WL 4805859 (S.D.N.Y. Sept. 30, 2019).......... 10

*Oddo Asset Mgmt. v. Barclays Bank PLC*,
19 N.Y.3d 584 (2012).......... 27

*Oldroyd v. Elmira Sav. Bank, F.S.B.*,
134 F.3d 72 (2d Cir. 1998) .......... 18

*Pacnet Network Ltd. v. KDDI Corp.*,
78 A.D.3d 478 (1st Dep't 2010) .......... 10

*PaineWebber Inc. v. WHV, Inc.*,
No. 95 Civ. 0052, 1995 WL 296398 (S.D.N.Y. May 16, 1995) .......... 8

*Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*,
369 F.3d 645 (2d Cir. 2004) .......... 17

*Parsons v. Kal Kan Food, Inc.*,
68 A.D.3d 1501 (3d Dep't 2009) .......... 14

*Paterno v. Laser Spine Inst.*,
24 N.Y.3d 370 (2014) .......... 15

*Planet Payment, Inc. v. Nova Info. Sys., Inc.*,
No. 07–cv–2520 (CBA)(RML), 2011 WL 1636921 (E.D.N.Y. Mar. 31, 2011) .......... 23, 25

*Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*,
449 F. App'x 57 (2d Cir. 2011) .......... 20

*Quintana v. B. Braun Med. Inc.*,
17-cv-06614 (ALC), 2018 WL 3559091 (S.D.N.Y. Jul 24, 2018) .......... 22

*Rajbhandari v. Shah*,
No. 02 Civ. 8778 (LTS), 2006 WL 74393 (S.D.N.Y. Jan. 11, 2006) .......... 21

*Raspberry Holdings LLC v. NextBank Int'l Inc.*,
No. 24-cv-1529 (LJL), 2025 WL 438270 (S.D.N.Y. Feb. 7, 2025) .......... 23

*S.G. v. Bank of China Ltd.*,
No. 23-CV-2866 (LAK), 2024 WL 1861158 (S.D.N.Y. Apr. 29, 2024) .......... 19

*Sejin Precision Indus. Co. v. Citibank*, N.A.,
235 F. Supp. 3d 542 (S.D.N.Y. 2016) .......... 10

*Seldon v. Direct Response Techs., Inc.*,
No. 03 Civ. 5381 (SAS), 2004 WL 691222 (S.D.N.Y. Mar. 31, 2004) .......... 9

*SNS Bank, N.V. v. Citibank*, N.A.,
7 A.D.3d 352 (1st Dep't 2004) .......... 27

*SOS Capital v. Recycling Paper Partners of PA, LLC*,
220 A.D.3d 25 (1st Dep't 2023) .......... 9

*Spinelli v. Nat'l Football League*,
96 F. Supp. 3d 81 (S.D.N.Y. 2015) ........ 17

*Sunward Elecs., Inc. v. McDonald*,
362 F.3d 17 (2d Cir. 2004) ........ 6

*Thomas v. Ashcroft*,
470 F.3d 491 (2d Cir. 2006) ........ 6

*Troma Ent., Inc. v. Centennial Pictures Inc.*,
729 F.3d 215 (2d Cir. 2013) ........ 11

*Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc.*,
No. 18-cv-11449 (JGK), 2020 WL 3051768 (S.D.N.Y. June 8, 2020) ........ 14

*White Plains Coat & Apron Co. Inc., v. Cintas Corp.*,
460 F.3d 281 (2d Cir. 2006) ........ 24

*William Kaufman Org., Ltd. v. Graham & James LLP*,
269 A.D.2d 171 (1st Dep't 2000) ........ 27

**Rules**

CPLR 301 ........ 6

CPLR 302(a)(1) ........ 7, 8, 9, 10

CPLR 302(a)(2) ........ 9, 10, 11

CPLR 302(a)(3) ........ 11

Fed. R. Civ. P. 9(b) ........ *passim*

Fed. R. Civ. P. 12(b)(6) ........ 18

Fed. R. Civ. P. 12(b)(2) ........ 3

**Other Authorities**

Restatement of Torts § 766 ........ 24

Defendant Trelleborg AB respectfully submits this Memorandum of Law in Support of its Motion to Dismiss I.S.T. North America LLC's ("ISTNA") Complaint ("Compl.") or, in the alternative, to compel arbitration.[1]

**PRELIMINARY STATEMENT**

Stripped of its dramatics, ISTNA's Complaint is an ill-fated attempt to hold *other* companies responsible for *ISTNA's* decision to rest its entire business on a single German supplier that later fell on hard times and was forced to sell the bulk of its assets—including those used to supply ISTNA—to a company that chose not to acquire the contract with ISTNA. As a result, ISTNA claims it was left "without a supplier" and its business was "destroyed." Yet, for all of the Complaint's salacious allegations, there is nothing improper about this. To the extent the German supplier breached its contract with ISTNA, ISTNA has apparently already obtained an award in arbitration for that breach. The fact that the supplier is now insolvent does not—*ipso facto*—give rise to *new* claims against *other* entities. ISTNA's attempt to prove otherwise fails at every turn.

The claims against Trelleborg AB are particularly baseless. Trelleborg AB did not buy the German supplier, IST Germany—Defendant Trelleborg Sealing Profiles GMBH ("Trelleborg Germany") did. Nor did Trelleborg AB employ any of the individuals alleged to have misled ISTNA's CEO, Mr. Camali, about IST Germany's future. And the only contract that Trelleborg AB had with ISTNA (or Mr. Camali) is a Non-Disclosure Agreement that is governed by Swedish law and requires "[a]ny disputes arising out of or in relation to [the NDA]" to be "finally settled by arbitration in accordance with the Swedish Arbitration Act in force at the time." Each of these facts is fatal to ISTNA's claims against Trelleborg AB—they should be dismissed.

---

[1] Defendants Trelleborg Pipe Seals Milford, Inc., Trelleborg Sealing Solutions US, Inc., Trelleborg Pipe Seals US, Inc., and Trelleborg Corporation are collectively defined as the "U.S. Entity Defendants." The U.S. Entity Defendants and Christoffer Ljungback are collectively defined as the "U.S. Defendants."

As a threshold matter, ISTNA's claims against Trelleborg AB fail for lack of personal jurisdiction. As detailed below and in the Declaration of Patrik Romberg (the "Romberg Decl." or "Romberg Declaration"), Trelleborg AB is a non-operating holding company incorporated in Sweden, with its principal place of business in Sweden. It has no operations, employees, bank accounts, offices, holdings or any other contacts required to subject it to jurisdiction in New York.

ISTNA cannot dispute these facts. Instead, it tries to plead around them through generalized allegations of group conduct and conclusory assertions of "alter ego" jurisdiction—all of which are legally insufficient to establish personal jurisdiction over Trelleborg AB. Both personal jurisdiction and liability must be alleged against each defendant individually. The Complaint does not come close to doing so for Trelleborg AB. Rather, ISTNA aims to impose liability on all Defendants (*and* subject them *all* to jurisdiction in New York) by collapsing a suite of distinct entities into a single fictional actor—*"Trelleborg"*—and attributing alleged conduct interchangeably among them. But ISTNA's reliance on the alleged conduct of *other* entities to establish personal jurisdiction *over Trelleborg AB* fails under well-established New York law.

ISTNA's claim that Trelleborg AB "dominated each of the other Entity Defendants such that each functioned as a mere instrumentality of Trelleborg AB" (Compl. ¶ 54), is insufficiently pled and lacks merit. The Romberg Declaration confirms that Trelleborg AB is a non-operating holding company that conducts no business in the United States—let alone in New York. Each of the other "Trelleborg" Defendants has its own board of directors, separate bank accounts, and independent books and records. None is financially dependent on Trelleborg AB, and all corporate formalities between Trelleborg AB and the other Defendants are properly observed. These are precisely the hallmarks of corporate independence that preclude a finding of alter-ego jurisdiction.

The only direct relationship between ISTNA and Trelleborg AB arises from the NDA. But,

as noted above, the NDA is governed by *Swedish* law and requires arbitration in *Sweden* of any disputes "*arising out of or in relation to*" it. Thus, to the extent the Complaint offers any viable claim against Trelleborg AB—and it does *not*—the claim must be arbitrated in Sweden. Alternatively, the matter should be dismissed on *forum non conveniens grounds* because it is beyond dispute that the overwhelming majority of the alleged misconduct occurred abroad—primarily in Germany—where most of the witnesses and documents are likely to be found.

Even if Trelleborg AB was subject to jurisdiction in New York, and the matter was not covered by the NDA's arbitration clause—neither of which is the case—dismissal would still be warranted because the Complaint fails to allege any plausible claims for relief against Trelleborg AB. The tortious interference claims fail because: they are premised on the misguided notion that a purchaser must take on every unwanted contract of a target company; are otherwise subject to an economic interest defense; and fail to plead the required interference by "wrongful means." The fraud and negligent misrepresentation claims fail because they are premised on non-actionable statements of intent without any demonstration of justified reliance or a corresponding special relationship. And the aiding and abetting a breach of fiduciary duty claim fails to plausibly allege that IST Germany owed ISTNA a fiduciary duty.

Thus, the Complaint should be dismissed as to Trelleborg AB.

## <u>SUMMARY OF ALLEGATIONS AND SWORN FACTS</u>[2]

### *A. ISTNA's Business and the Exclusivity Agreement.*

ISTNA alleges it "is a leading company in the 'trenchless' pipe repair and rehabilitation industry." (Compl. ¶ 8.) According to the Complaint, "trenchless pipe repair allows for buried

---

2 The facts supporting this Memorandum of Law are set forth in the Complaint and the Declaration of Patrik Romberg, dated April 1, 2026 ("Romberg Decl."). Courts may consider materials outside the pleadings, including sworn statements, when deciding motions to dismiss for lack of personal jurisdiction under Rule 12(b)(2). *See, e.g., Jonas v. Est. of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015).

municipal pipes to be rehabilitated without the need to excavate the surface to reach them." (*Id.*) On April 17, 2019, ISTNA allegedly signed an exclusivity agreement "to serve as IST Germany's exclusive North American sales representative" (the "Exclusivity Agreement"). (*Id*. at 104.)

ISTNA alleges that its business was totally reliant on IST Germany's supply of products. (Compl. ¶¶ 17, 24.) Yet the Complaint does not identify any provisions of the Exclusivity Agreement that prevented IST Germany from selling any of its assets, shares, or portions of its business. The only restriction on assignment identified in the Complaint is a provision of the Exclusivity Agreement that allegedly prevented the assignment of the agreement itself (or rights thereunder). (Compl. ¶ 113.) While ISTNA suggests it could object to any sale of IST Germany (or its assets), it does not identify any such provision in the Exclusivity Agreement. (*Id.*) Trelleborg AB was not a party to the Exclusivity Agreement—nor were any of the other entity Defendants.

***B. IST Germany's Financial Issues and the Sale of its Assets to Trelleborg Germany***

ISTNA alleges that "[i]n 2020, IST Germany's majority shareholder, Mathias Wettstein, had been arrested in Germany for tax fraud[.]" (Compl. ¶ 119.) At around that time, "IST Germany began suffering significant financial difficulties." (*Id.*) These financial difficulties resulted from "mismanagement [of its CEO, Jorg Vogt], loss of key staff, and [IST Germany's] inability to service and maintain its own products and technologies." (*Id.* ¶ 120.) As a result, IST Germany's assets were for sale "on the cheap." (*Id.* ¶ 126.)

While Trelleborg Germany was exploring acquiring IST Germany, ISTNA alleges that "Trelleborg" expressed interest in purchasing ISTNA "through one of the U.S. Entities" and that, "as part of those discussions," ISTNA disclosed "business plans for the market, projections for sales, and ISTNA's financial statements." (Compl. ¶¶ 140-142.) On June 17, 2022, Trelleborg AB and ISTNA executed the NDA covering these discussions. (Compl. ¶¶ 140-42.) The NDA is governed by Swedish law and requires arbitration in Sweden of "[a]ny disputes arising out of or

in relation to" the agreement. (*See* ECF No. 33-1.) ISTNA alleges it provided "most documents" under the NDA and admits that it provided some information *before* its execution. (Compl. ¶ 142.)

Although Trelleborg Germany considered investing in or purchasing IST Germany, it ultimately acquired the bulk of IST Germany's assets under a share and asset purchase transaction (the "SAPA") on October 11, 2022. (Compl. ¶ 167.) Trelleborg Germany did not acquire the Exclusivity Agreement or any rights and/or obligations thereunder. (Compl. ¶ 23.) Instead, Trelleborg Germany eventually elected to sell directly to customers in North America without needing to go through a distributor. (Compl. ¶ 91.) Trelleborg AB is not a party to the SAPA.

### *C. Defendants' Corporate Separateness, ISTNA's False Allegations of Executive Overlap, and Trelleborg AB's Lack of Independent Contacts With New York*

Each Defendant has: (i) a separate office, with separate files; (ii) a separate board of directors; and (iii) separate financial books, records, and bank accounts. (Romberg Decl. ¶¶ 18-22.) Trelleborg AB does not direct, control, or otherwise manage the operations of any of these Defendants. (*Id.* ¶ 15.) Each of the Defendant entities, and Trelleborg Germany, have discretion and autonomy in how they manage their daily operations. (*Id.* ¶¶ 16-17.) None of the other Defendants is financially dependent on Trelleborg AB, and each pays its own business expenses, including the salaries of all personnel, without assistance from Trelleborg AB. (*Id.* ¶ 23.)

To the extent the Complaint attempts to allege any conduct by Trelleborg AB, it alleges that certain individuals, including Andreas Renulf, Simon Burke, and Jean Paul Minderman, are executives of multiple "Trelleborg" companies, including Trelleborg AB. (Compl. ¶¶ 19-21, 28-30, 48, 83-84, 90-92, 140, 154-157.) But none of these individuals are—or were at the time of the events described in the Complaint—employees of Trelleborg AB. (Romberg Decl. ¶ 25.)

Trelleborg AB is a non-operating holding company organized under the laws of Sweden with its principal place of business in Trelleborg, Sweden. (Romberg Decl. ¶¶ 3-4.) It does not

design, manufacture or sell any products or services—in the United States or elsewhere. (*Id*. ¶¶ 3, 12.) It has never been incorporated in New York or otherwise authorized to do business in New York, never had an office or any employees in New York, never had a bank account in New York, and has never paid any taxes in New York. (*Id*. ¶¶ 5-14.)

## ARGUMENT

### I. THE CLAIMS AGAINST TRELLEBORG AB SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

In diversity actions, courts apply the jurisdiction law of the forum state. *See, e.g., Thomas v. Ashcroft,* 470 F.3d 491, 495 (2d Cir. 2006). Under New York law, a defendant may be subject to general jurisdiction under New York Civil Practice Law & Rules ("CPLR") § 301 or specific jurisdiction under CPLR 302, the state's long-arm jurisdiction statute. *Id.* Plaintiff bears the burden of demonstrating both a statutory basis for personal jurisdiction under New York law and compliance with constitutional due process. *See, e.g., Marcus v. Archer*, No. 19-CV-7099 (JPO), 2020 WL 4937353, at *2 (S.D.N.Y. Aug. 24, 2020).

"[A] plaintiff is required to establish personal jurisdiction separately over each defendant," *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021), "with respect to each claim asserted." *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004). "Conclusory non-fact-specific jurisdictional allegations or legal conclusions couched as a factual allegation will not establish a *prima facie* showing of jurisdiction." *DeLorenzo v. Viceroy Hotel Grp.*, LLC, 757 Fed. App'x 6, 8 (2d Cir. 2018) (summary order) (cleaned up).

#### A. The Court Does Not Have General Jurisdiction Over Trelleborg AB

General jurisdiction requires a corporation's in-forum contacts to be "so continuous and systematic as to render it essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S.

117, 138 (2014) (cleaned up). The *Daimler* Court characterized such a scenario as an "exceptional case." *Id*. at 139 n. 19; *accord Aybar v. Aybar*, 37 N.Y.3d 274, 289 (2021). No such "exceptional case" exists here. As explained above (*see supra* at 5-6), Trelleborg is a Swedish holding company with its principal place of business in Sweden, and it has no presence of any kind in New York. These facts foreclose any claim that Trelleborg AB is "essentially at home" in New York. (Compl. ¶¶ 39–42.) Thus, Trelleborg AB is not subject to general jurisdiction here.

### B. The Court Does Not Have Specific Jurisdiction Over Trelleborg AB

Trelleborg AB is also not subject to long-arm jurisdiction here. Putting aside ISTNA's alter-ego theory—discussed in Section I.C. *infra*—the Complaint contains no non-conclusory jurisdictional allegations. Instead, it relies on improper group pleading concerning "Trelleborg" and a handful of attenuated interactions that, even if true, do not satisfy any prong of CPLR 302.

#### *1. Trelleborg AB Did Not "Transact Business" in New York*

Under CPLR 302(a)(1), the Court may exercise jurisdiction over a foreign defendant if it "transacts any business within the state" and the lawsuit "arises from" those activities. "A defendant transacts business within the meaning of § 302(a)(1) when it purposefully avails itself of the privilege of conducting activities [in New York], thus invoking the benefits and protections of its laws." *Ballon Stoll P.C. v. Cutler*, No. 23-cv-00366 (ER), 2024 WL 1256049, at *6 (S.D.N.Y. Mar. 25, 2024). The Complaint lacks any such allegations as to Trelleborg AB.

ISTNA's jurisdictional arguments against Trelleborg AB are primarily (if not, entirely) based on the alleged "Piermont Dinner" at which Mr. Camali allegedly met with Christoffer Ljungback and Andreas Renulf "to discuss Trelleborg's purported acquisition of IST Germany and potential acquisition of ISTNA." (Compl. ¶ 154.) But the Piermont Dinner offers no basis to subject Trelleborg AB to jurisdiction *in New York*. ISTNA concedes that Ljungback does not work

for Trelleborg AB. (*Id.* ¶ 46.) And despite ISTNA's allegations, Renulf is not, and was not at the time, an employee of Trelleborg AB. (Romberg Decl. ¶ 25.)

Even if the Court accepts as true ISTNA's conclusory allegation that Renulf was an executive of both Trelleborg AB and Trelleborg Germany, ISTNA does not attribute any of the alleged statements made at the dinner to Trelleborg AB. Instead, ISTNA attributes the alleged statements to Ljungback and Renulf *collectively*. (Compl. ¶¶ 154-58.) This, along with ISTNA's repeated use of the singular term "Trelleborg" to relate to all Defendants, constitutes impermissible group pleading. "Personal jurisdiction under CPLR § 302(a)(1) requires that each defendant's contacts with the forum be assessed individually." *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318 (GBD) (BCM), 2018 WL 4681616, at *13 (S.D.N.Y. Sept. 04, 2018) (holding that Plaintiffs "cannot rely on their allegations as to the conduct of the 'Infomir Defendants' to save their claims against Infomir *GmbH*" (emphasis in original)); *see In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d at 135 ("To allege personal jurisdiction over a defendant, group pleading is not permitted.").

Further, the case law is clear that an isolated meeting in New York—particularly one that is exploratory in nature (*i.e.*, Trelleborg Germany's potential acquisition of IST Germany)—does not constitute the purposeful transaction of business required to assert personal jurisdiction under CPLR 302(a)(1). *Aquiline Capital Partners LLC v. Finarch LLC,* 861 F. Supp. 2d 378, 388 (S.D.N.Y. 2012) ("New York courts have held that such exploratory meetings taking place in New York . . . are not sufficient contacts to constitute the transaction of business within the meaning of CPLR 302(a)(1)"); *PaineWebber Inc. v. WHV, Inc.,* No. 95 Civ. 0052, 1995 WL 296398, at *3 (S.D.N.Y. May 16, 1995) ("occasional meetings in the forum state that are exploratory, unproductive or insubstantial are insufficient to establish requisite contacts with the state").

Even if ISTNA cleared these insurmountable hurdles, the Complaint does not plausibly allege that ISTNA's claims arise from the Piermont Dinner. The alleged harm to ISTNA stems from an alleged breach of the NDA (which had nothing to do with the Piermont Dinner) and/or the breach of the Exclusivity Agreement (which occurred *after* the SAPA was signed two months *after* the Piermont Dinner). (Compl. ¶¶ 154, 167.) The alleged injury arises from those foreign transactions—not from an isolated dinner in New York two months before the SAPA closed. *Barrett v. Tema Development (1988), Inc.,* 463 F. Supp. 2d 423, 433 (S.D.N.Y. 2006) (single meeting related to foreign agreement insufficient to support jurisdiction, even where New York bank account and New York law firm involved).

Thus, ISTNA cannot establish personal jurisdiction over Trelleborg AB under CPLR 302(a)(1).

### *2. Trelleborg AB Did Not Commit a "Tortious Act" in New York*

CPLR 302(a)(2) permits long-arm jurisdiction over an out-of-state defendant that "commits a tortious act within the state." The statute requires "that the tortious act itself physically be performed within New York." *Seldon v. Direct Response Techs., Inc.*, No. 03 Civ. 5381 (SAS), 2004 WL 691222, at *3 (S.D.N.Y. Mar. 31, 2004). The Complaint is bereft of any such allegations. Indeed, each of the infirmities that preclude jurisdiction under CPLR 302(a)(1) are equally applicable to an analysis under CPLR 302(a)(2). Once again, ISTNA's jurisdictional arguments rest on the Piermont Dinner. But, as with CPLR 302(a)(1), undifferentiated group allegations cannot satisfy jurisdiction under CPLR 302(a)(2)—particularly given the heightened pleading requirements of Fed. R. Civ. P. 9(b). *SOS Capital v. Recycling Paper Partners of PA, LLC*, 220 A.D.3d 25, 36-37 (1st Dep't 2023) (holding CPLR 302(a)(2) requires specific allegations of a tortious act committed by a particular defendant or agent physically present in New York; group or conclusory allegations are insufficient); *see In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d

219, 234 (S.D.N.Y. 2019) (rejecting jurisdiction under CPLR 302(a)(2) for failure to identify a specific actor or fact supporting a tortious act within New York).

Even if the statements ISTNA attributes to *both* individuals at the Piermont dinner were also attributed to Trelleborg AB, they do not constitute the commission of a tortious act in New York for purposes of CPLR 302(a)(2). Similar to CPLR 302(a)(1), statements regarding future plans, expectations, or intentions—precisely the sort of statements ISTNA alleges were made at the dinner—are not actionable as fraud. *See Sejin Precision Indus. Co. v. Citibank*, N.A., 235 F. Supp. 3d 542, 554–55 (S.D.N.Y. 2016) ("a prediction of future events . . . cannot sustain a fraud claim"); *Mehmet v. Gautier*, No. 18-CV-9090 (VSB), 2019 WL 4805859, at *9 (S.D.N.Y. Sept. 30, 2019) ("a misrepresentation that is merely a statement of intent to perform under the contract cannot constitute fraud"); *Pacnet Network Ltd. v. KDDI Corp.,* 78 A.D.3d 478, 479 (1st Dep't 2010) ("[S]tatements of prediction or expectation cannot sustain a cause of action for fraudulent inducement or negligent misrepresentation."). And even if such statements were actionable, the Complaint fails to identify any contemporaneous communication—let alone one attributable to Trelleborg AB—predating or coinciding with the Piermont Dinner that contradicts any alleged statements made there.[3] Absent any such allegations demonstrating that any individual's stated *intention* to perform a certain way months later was false at the time made, the Complaint fails to plead "facts that give rise to a strong inference of fraudulent intent," as required by Rule 9(b). *See, e.g., Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 304-05 (S.D.N.Y. 2022) ("Plaintiff fails to evince a strong inference of fraudulent intent and thus the fraud claim is dismissed.")

---

[3] What ISTNA calls "damning" emails—sent *months* after the Piermont dinner—reflect, at most, ordinary commercial discussions concerning the contemplated transaction and potential risks regarding the relationship between IST Germany and ISTNA. (Compl. ¶¶ 176-78.) Nothing in those emails even references the Piermont Dinner months earlier, much less shows that any alleged statement at the Piermont Dinner was made by a Trelleborg AB representative or was false.

Thus, the Court cannot exercise jurisdiction over Trelleborg AB under CPLR 302(a)(2).

### 3. *Trelleborg AB Did Not Commit a Tortious Act that Caused Injury Within New York*

CPLR 302(a)(3) applies only where a defendant commits a tortious act outside New York that causes injury within the state. In determining whether this requirement is met, courts apply the "situs-of-injury" test, which asks where "the original event which caused the injury" occurred—*not* where Plaintiff ultimately felt economic consequences. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999). It is well settled that "the residence or domicile of the injured party within New York is not a sufficient predicate for jurisdiction." *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013).

Here, the "original event" giving rise to ISTNA's alleged injury was the alleged breach of the Exclusivity Agreement by IST Germany and the subsequent alleged interference with ISTNA's economic relations by Trelleborg Germany, all of which is alleged to have occurred *outside* New York—and none of which is attributed to *Trelleborg AB*. (Compl. ¶¶ 157, 160, 163–167, 168, 195, 198, 201–202.) Moreover, ISTNA fails to identify the customers it claims it lost to Trelleborg Germany or where they are located. To the extent ISTNA relies on its New York headquarters to claim injury here, that is not sufficient to claim injury in New York. *Troma*, 729 F.3d at 218. (collecting cases and noting "the suffering of economic damages in New York is insufficient, alone" to confer jurisdiction).

Even if ISTNA could establish an in-state injury, it fails to satisfy the additional requirements under CPLR 302(a)(3). CPLR 302(a)(3)(i) requires that the defendant "regularly does or solicits business" in New York or engages in a "persistent course of conduct" here. The Complaint contains no such allegations. Nor does ISTNA satisfy CPLR 302(a)(3)(ii), which requires that the defendant expected or should reasonably have expected its actions to have

consequences in New York and derives substantial revenue from interstate or international commerce here. The Complaint contains no non-conclusory allegations that Trelleborg AB directed any conduct toward New York or had any reason to anticipate being haled into court here. This also precludes a finding that Trelleborg AB is subject to personal jurisdiction in New York. *See, e.g., Helio Logistics, Inc. v. Mehta,* No. 22-cv-10047 (NSR), 2023 WL 21887, at *11 (S.D.N.Y. Jan. 3, 2023).

### C. <u>ISTNA's Alter-Ego Theory of Jurisdiction Fails as a Matter of Law</u>

Absent any legitimate basis to claim jurisdiction over Trelleborg AB in New York, ISTNA resorts to conclusory allegations that all "Entity Defendants" function as a single "Trelleborg" enterprise and are "alter egos of one another." (Compl. ¶¶ 53, 60-63.). But ISTNA's allegations fall well short of establishing alter-ego jurisdiction.

"In determining whether an entity is properly understood as an alter-ego for jurisdictional purposes, courts consider a variety of factors, including (1) whether there was a failure to observe corporate formalities, (2) evidence of undercapitalization, (3) intermingling of personal and corporate funds, (4) shared office space and phone numbers, (5) any overlap in ownership and directors and (6) whether the corporation was used to perpetrate a wrongful act against the plaintiffs." *Caplan v. Dollinger*, 803 F. Supp. 3d 219, 232 (S.D.N.Y. 2025) (internal quotations omitted). "No one factor is determinative, but rather the key inquiry is whether the corporation is being used by the alleged dominating entity to advance its own personal interests as oppose[d] to furthering the corporate ends." *CesFin Ventures LLC v. Al Ghaith Holding Co. PJSC*, No. 21-CV-1395 (PGG) (SDA), 2022 WL 18859076, at *5 (S.D.N.Y. Dec. 10, 2022). Measured against these factors, the Complaint fails across the board.

### 1. *The Complaint Fails to Allege Any Non-Conclusory Failures of Corporate Formalities, Undercapitalization, or Intermingling of Funds*

For starters, factors (1), (2), and (3) of the alter-ego analysis are entirely absent here. There are no allegations of undercapitalization or intermingling of funds and no facts suggesting any entity functioned as a shell or lacked financial independence. Nor are there any allegations of concrete failures of corporate formalities—such as the absence of separate books, records, or governance. Instead, ISTNA relies on generalized and conclusory allegations of "domination" and "centralized decision-making," (Compl. ¶ 54), which courts routinely reject as insufficient—even when *more* particularized facts are alleged. *See, e.g., Caplan*, 803 F. Supp. 3d at 232–33 (holding allegations concerning "abuse of [affiliate's] corporate form are far too generalized and conclusory to suffice"); *Long Side Ventures LLC v. Hempacco Co*., Inc., No. 22-cv-08152 (ALC), 2023 WL 6386888, at *8 (S.D.N.Y. Sept. 29, 2023) (allegation deemed conclusory where "plaintiffs d[id] not detail how Defendants cooperated to transfer assets fraudulently, or why their only intent was to render [the alleged alter ego] 'judgment-proof'").

On this point, the decision in *Caplan,* 803 F. Supp. 3d at 232-33 is instructive. In *Caplan*, shareholders argued for personal jurisdiction over a broad set of corporate affiliates and officers by alleging they were alter egos of the contracting entities. The Court rejected the theory because the plaintiffs: (i) "fail[ed] to connect that undercapitalization in any concrete way to each [affiliate]"; (ii) "d[id] not identify specific facts or details about how each [affiliate] used [parent] or [subsidiary] to transfer assets for their own benefit, engage in self-dealing, or otherwise serve as their shell companies; and (iii) "violate[d] the rule against group pleadings." *Id.* The same result should follow here.

### 2. *Allegations of Shared Branding, Executives, and Office Constitute Insufficient "Superficial Indicia" that Trelleborg AB is an Alter Ego*

ISTNA's reliance on shared branding, overlapping executives, and purportedly shared

"office space and operational locations" does not alter this conclusion. (Compl. ¶¶ 54, 64-66.) *Caplan* and other cases make clear that mere overlap in ownership, directors, branding, and office space are not enough to establish alter-ego jurisdiction. *Caplan*, 803 F. Supp. 3d at 232–33; *Parsons v. Kal Kan Food, Inc.*, 68 A.D.3d 1501, 1503 (3d Dep't 2009) (rejecting alter ego theory of personal jurisdiction where two companies shared "an address and phone number," "use[d] the same Web site and promotional brochure," and shared "officers and directors"); *Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc.*, No. 18-cv-11449 (JGK), 2020 WL 3051768, at *8 (S.D.N.Y. June 8, 2020) ("Allegations of complete ownership, common officers and personnel, and shared office space are, without more, insufficient for the Court to infer that [the alleged dominated company] was controlled and dominated by [the alleged dominating company.]"); *In re All Year Holdings Ltd.*, 648 B.R. 434, 449 (Bankr. S.D.N.Y. 2022) (same); *Bd. of Managers of Gansevoort Condo. v. 325 W. 13th, LLC*, 121 A.D.3d 554, 554-55 (1st Dep't 2014) (same).

Moreover, the evidence submitted by Trelleborg AB establishes that each entity operates independently, has its own office, and does not direct or control day-to-day operations of the others. (Romberg Decl. ¶¶ 15-23.)

#### ***3. ISTNA Has Not Alleged That the Corporate Form Was Used to Commit a Wrong***

Finally, although the Complaint alleges that "Trelleborg" collectively engaged in tortious conduct, it does not plead facts showing that Trelleborg AB used any specific entity to perpetrate that conduct. *See CesFin Ventures LLC,* 2022 WL 18859076, at *5 (noting "the key inquiry is whether the corporation is being used by the alleged dominating entity to advance its own personal interests as oppose[d] to furthering the corporate ends"). But the law requires defendant-specific allegations linking the corporate form to the alleged wrongdoing. *Caplan*, 803 F. Supp. 3d at 232–33 (holding core alter ego allegations "violate the rule against group pleadings"). The absence of

any such allegations is dispositive—particularly where, as here, the record demonstrates that none of the other entities is financially dependent on Trelleborg AB and each is responsible for its own operations and expenses. (Romberg Decl. ¶ 23.)

Thus, ISTNA's alter-ego theory offers no basis for personal jurisdiction over Trelleborg AB.

### D. Exercising Jurisdiction Over Trelleborg AB Would Violate Due Process

Finally, for the same reasons ISTNA cannot satisfy CPLR 302, it cannot establish the minimum contacts required for due process. The Complaint does not allege that *Trelleborg AB* purposefully directed any activity toward New York or that ISTNA's claims arise from any such contacts. Thus, Trelleborg AB lacks the "minimum contacts" with New York required for the exercise of personal jurisdiction to comply with due process. *See, e.g., Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 377 (2014).

## II. IN THE ALTERNATIVE, THE COMPLAINT SHOULD BE DISMISSED ON FORUM NON CONVENIENS GROUNDS

Even where jurisdiction exists over a defendant, a complaint should be dismissed on *forum non conveniens* grounds where: (i) the plaintiff's choice of forum is entitled to reduced deference, (ii) an adequate alternative forum exists, and (iii) the balance of private and public interest factors strongly favors litigation abroad. *See In re Alcon Shareholder Litig.*, 719 F. Supp. 2d 263, 269 (S.D.N.Y. 2010). The factors to be considered in the *form non conveniens* analysis include, *inter alia*, the location of key witnesses and documents, the availability of compulsory process over foreign non-parties, the applicability of foreign law, and the strong local interest in having disputes centered abroad resolved in their home forum. *Id.* at 275-76.

Dismissal on *forum non conveniens* grounds is appropriate here. The center of gravity of this dispute is in Europe: Trelleborg AB is a *Swedish* holding company, the challenged transaction

involved IST *Germany* and the sale of IST Germany's assets to Trelleborg *Germany*, the NDA is a *Swedish* contract, and the key witnesses and documents concerning the negotiation, structure, and implementation of all relevant transactions are abroad. Where, as here, the claims against a foreign defendant arise principally from foreign conduct and foreign evidence, dismissal in favor of an adequate foreign forum is appropriate notwithstanding plaintiff's forum choice. *In re Alcon Shareholder Litig.*, 719 F. Supp. 2d at 279 ("Although Plaintiffs are American entities and individuals, the dispute at issue is decidedly Swiss, and the Court is persuaded that Plaintiffs, if they so choose, would be able to adequately and more appropriately litigate this dispute in Switzerland."). Thus, even if jurisdiction can be asserted over Trelleborg AB, the Complaint should be dismissed on *forum non conveniens* grounds. *See Kingstown Cap. Mgmt., L.P. v. Vitek*, No. 20-3406, 2022 WL 3970920, at *3 (2d Cir. 2022) (summary order) (affirming dismissal on *forum non conveniens* grounds where plaintiff had New York offices but "nearly all the significant events in [the] case took place in Europe[,] . . . virtually all the evidence and witnesses are overseas[,] . . . [and] the parties dispute whether the district court even has personal jurisdiction over all Defendants").

## III. EVEN IF JURISDICTION EXISTS, THE CLAIMS AGAINST TRELLEBORG AB MUST BE ARBITRATED IN SWEDEN

Even if the Court were to conclude that Trelleborg AB is subject to jurisdiction here, and that dismissal is also not warranted on forum non conveniens grounds, litigation of any claims against Trelleborg AB would still be improper because they fall within the scope of the NDA's broad arbitration provision covering "[a]ny disputes arising out of or in relation to" the NDA. (*See* Diakos Decl. Ex. A, ECF No. 33-1.) Accordingly, ISTNA must be compelled to pursue its claims against Trelleborg AB through arbitration in Sweden.

The Second Circuit has "often and emphatically applied" the strong federal policy in favor of arbitration. *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006); *see Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 654 (2d Cir. 2004) (noting federal policy in favor of arbitration "applies with particular force in international disputes"). An arbitration clause covering "[a]ny claim or controversy arising out of or relating to" an agreement—the same language that appears in the NDA—is considered "*the paradigm of a broad clause*." *Id.* (citing *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 20 (2d Cir. 1995)) (emphasis added). "Where an arbitration clause is broad, the resulting presumption of arbitrability . . . is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 100-01 (S.D.N.Y. 2015).

At bottom, ISTNA's claims call into question the alleged actions of various Defendants who allegedly obtained ISTNA's confidential information to destroy ISTNA's supply chain and steal its customers. (Compl. ¶¶ 22-24; 147-52.) Based on the Complaint's allegations, any alleged confidential information Trelleborg AB could have received would be subject to the NDA. The confidential information exchanged under the NDA, the interactions surrounding IST Germany's fate, the alleged breach of the Exclusivity Agreement, and the purported communications with ISTNA's customers post-SAPA are all part of the same alleged course of conduct.

As ISTNA itself alleges, they form one "calculated scheme of deception and corporate sabotage," and one "covert takeover operation . . . to eliminate ISTNA and seize control of its markets, customers, and technology." (Compl. ¶¶ 1–2.) Allegations concerning "Trelleborg's" purported misuse of confidential information obtained under the NDA "as a roadmap for its own market invasion" appear throughout the Complaint. (*See* Compl. ¶¶ 5, 22, 140–53, 218, 220, 228,

236, 246.) And critically, the only theory that plausibly connects Trelleborg AB to ISTNA's claims runs through the NDA itself.

That is true regardless of how ISTNA labels its causes of action. The alleged misrepresentations relate to the exchange and alleged misuse of confidential information (Compl. ¶¶ 22, 141–149, 236); the interference claims rest on the alleged use of that information to disrupt ISTNA's relationships (*id.* ¶¶ 147–152, 224–230); and the aiding and abetting claim depends on the same underlying conduct (*id.* ¶¶ 251–256.) Each of these theories "touch matters" covered by the NDA and fall within the scope of its arbitration clause. *See Oldroyd v. Elmira Sav. Bank, F.S.B.*, 134 F.3d 72, 77 (2d Cir. 1998) ("In determining whether a particular claim falls within the scope of the parties' arbitration agreement, [courts] focus on the factual allegations in the complaint rather than the legal causes of action asserted." (internal citations and quotations omitted)); *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 172 (2d Cir. 2004) ("If the allegations underlying the claims touch matters covered by the parties' agreements, then those claims must be arbitrated, whatever the legal labels attached to them.").

Accordingly, the Court should enforce the NDA's arbitration clause and refer the claims against Trelleborg AB to arbitration. *See, e.g., Desarrolladora La Ribera v. Anderson*, No. 24-CV-67 (LAK) (BCM), 2024 WL 5186600, at *19-22 (S.D.N.Y. Dec. 20, 2024) (holding claims fall within broad arbitration provision and referring claims to arbitration).

## IV. THE COMPLAINT INDEPENDENTLY FAILS TO STATE A CLAIM AGAINST TRELLEBORG AB

While the Court need not reach the substance of ISTNA's claims against Trelleborg AB, to the extent it does, they are fatally flawed. To survive a motion to dismiss under Rule 12(b)(6), it is not enough to offer "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555 (2007)). While the Court accepts well-pleaded factual allegations as true, it need not credit legal conclusions "couched as a factual allegation," and allegations that are merely "consistent with" liability fall short of plausibility. *Ashcroft*, 556 U.S. at 678–79. These principles have particular force where, as here, a plaintiff relies on undifferentiated group pleading. *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order).

Here, the claims against Trelleborg AB should be dismissed for three fundamental reasons: (i) ISTNA fails to allege any actionable conduct by Trelleborg AB and relies on group pleading; (ii) each tort claim is a repackaged contract claim for breach of the NDA; and (iii) each claim fails for numerous independent reasons.

### A. <u>The Complaint Fails to Plead Any Actionable Conduct by Trelleborg AB</u>

The Complaint fails in the first instance because ISTNA relies on undifferentiated allegations against "Trelleborg" or "Defendants" *collectively*. A complaint that "lumps all the defendants together in each claim and provides no factual basis to distinguish their conduct" fails to satisfy federal pleading standards. *S.G. v. Bank of China Ltd.*, No. 23-CV-2866 (LAK), 2024 WL 1861158, at *2 (S.D.N.Y. Apr. 29, 2024) (noting "[t]he fact that . . . separate legal entities may have a corporate affiliation . . . does not alter this pleading requirement"); *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d at 147 ('[W]hen fraud is alleged against multiple defendants, a Plaintiff must set forth separately the acts complained of by each defendant. A complaint may not simply clump defendants together in vague allegations to meet the pleading requirements of Rule 9(b).' (internal quotation marks omitted)).

It is well-settled that, "[t]he failure to isolate the key allegations against each defendant supports dismissal." *Id.* Here, the Complaint does not specifically allege that *Trelleborg AB* negotiated the IST Germany transaction, made operational decisions, or engaged in any of the conduct underlying ISTNA's claims on a defendant-specific basis. Nor can ISTNA rely on its

conclusory alter-ego allegations to fill that gap—particularly under the heightened pleading standards of Delaware law, which governs the alter-ego analysis here.[4] *See Compagnie des Grands Hotels d'Afrique S.A. v. Starwood Cap. Grp. Glob. I LLC*, No. 23-2631, 2024 WL 4249723, at *3 (3d Cir. 2024) ("Under Delaware law, veil piercing is an uncommon remedy reserved for 'the exceptional case,' where a corporation is shown to be 'a sham' that 'exist[s] for no other purpose than as a vehicle for fraud.'"). Indeed, ISTNA has *conceded* that the Complaint "*does not state an alter ego liability claim or seek to pierce the corporate veil to hold the U.S. Defendants accountable*[.]" *See* ISTNA's Opposition to U.S. Defendants' Motion to Dismiss, ECF No. 41, at 25. Absent an alter-ego imputation or piercing the corporate veil, what remains are group-pleaded allegations that fall well short of satisfying federal pleading standards.

### B. ISTNA's Claims Attempt to Repackage a Contractual Dispute as Tort Claims

As addressed above, on their face, ISTNA's allegations arise from the contractual relationship created by the NDA. *See supra* at 17-18. "Under New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual; attempts to repackage them as sounding in fraud, conversion, and other torts . . . are generally precluded, unless based on a duty independent of the contract." *Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 F. App'x 57, 59 (2d Cir. 2011) (collecting cases). This principle applies with particular force here because ISTNA's claims arise from the alleged misuse of confidential information, which is covered by the NDA.

ISTNA does not plead any legal duty owed by Trelleborg AB independent of the NDA. Instead, ISTNA's tort claims merely restate the premise that Trelleborg AB obtained confidential

---

4 Delaware law governs any substantive alter-ego analysis because the U.S. Entity Defendants are incorporated in Delaware. *See, e.g., A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, No. 12 Civ. 4828 (KPF), 2018 WL 1273343, at *4 (S.D.N.Y. Mar. 5, 2018) (applying Delaware law to assess sufficiency of alter- ego allegations on motion to dismiss where defendants were incorporated in Delaware).

information under the NDA and later acted inconsistently with ISTNA's expectations. That is a standard claim for breach of contract—which ISTNA has not even brought (no doubt in hopes of avoiding the NDA's arbitration clause)—that provides an independent basis to dismiss all claims asserted against Trelleborg AB. *See, e.g., Converged Compliance Solutions, Inc. v. XOP Networks, Inc.,* No. 21-CV-5482 (PGG) (OTW), 2024 WL 4665114, at *12 (S.D.N.Y. Sept. 25, 2024).

### C. <u>Each Claim Independently Fails as to Trelleborg AB</u>

Finally, even if the Court were to analyze each cause of action separately, each fails as to Trelleborg AB.

#### *1. The Misrepresentation Claims Fail Against Trelleborg AB*

The Complaint asserts two causes of action for alleged misrepresentations: Fraudulent Misrepresentation and Concealment (Third Cause of Action); and Negligent Misrepresentation (Fourth Cause of Action). Neither has merit.

##### *a. ISTNA's Fraudulent Misrepresentation and Concealment Claim Fails.*

"To state a claim for fraud under New York law, a plaintiff must allege (1) a material misrepresentation or omission of fact; (2) which the defendant knew to be false; (3) which the defendant made with the intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 402 (2d Cir. 2015). ISTNA's fraud claim fails on numerous levels. As a threshold matter, ISTNA fails to specify the precise misrepresentations on which the claim is based.

Instead, ISTNA's fraud claim proceeds on vague, conclusory allegations that ISTNA was misled as to whether Trelleborg Germany was interested in purchasing ISTNA, ISTNA Germany, or both. (Compl. ¶¶ 137–145, 154–157.) Such allegations do not satisfy the rigorous pleading standards of Rule 9(b). *See, e.g., Rajbhandari v. Shah*, No. 02 Civ. 8778 (LTS), 2006 WL 74393, at *6 (S.D.N.Y. Jan. 11, 2006) (dismissing fraud claim for failure to identify the allegedly

fraudulent statements and their circumstances with the specificity required by Rule 9(b)). Rather, ISTNA is required to allege—*with specificity*—a material misrepresentation or omission of fact and attribute that misrepresentation to a specific party. The Complaint falls well short of doing so.

For the same reasons, the Complaint lacks allegations sufficient to demonstrate an actionable misrepresentation by Trelleborg AB (or any Defendant). The only alleged representations discussed in any detail (although far from that required by Rule 9(b)) are the statements purportedly made at the Piermont Dinner. But as discussed above (*see supra* at 8, 10), statements regarding future plans, expectations, or intentions—precisely the sort of statements ISTNA alleges were made at the dinner—are not actionable. *See Sejin Precision Indus. Co.*, 235 F. Supp. 3d at 554–55 ("a prediction of future events . . . cannot sustain a fraud claim").

The Complaint also lacks allegations establishing the requisite element of reliance. *See, e.g., Quintana v. B. Braun Med. Inc.*, 17-cv-06614 (ALC), 2018 WL 3559091 at *7 (S.D.N.Y. Jul 24, 2018) (noting elements and dismissing claims for not adequately pleading reliance). At most, ISTNA argues it did three things in "reliance" on the alleged misrepresentations: (1) "[Camali] would have challenged the Takeover" (Compl. ¶ 18); (2) "ISTNA invested millions of dollars and years worth of effort into making the Company a success" (*Id*. ¶ 12); and (3) ISTNA provided "confidential business plans under the guise of a nondisclosure agreement" (*Id*. ¶ 5.) None of these support a fraud claim.

*First*, ISTNA does not identify any provision of the Exclusivity Agreement that entitled it to "challenge[] the Takeover." *Second*, ISTNA alleges it made further investments into the Company "[g]iven the language of the Exclusivity Agreement"—not any alleged misrepresentations by any of the Defendants. (Compl. ¶ 12.) *Third*, ISTNA alleges it provided confidential business plans under the NDA—not any representations collateral to it. (Compl. ¶ 22);

*DM Manager LLC v. Fid. Nat'l Info. Servs., Inc.*, No. 23-CV-00617 (ER), 2024 WL 1347724, at *5 (S.D.N.Y. Mar. 29, 2024) (fraud claim can only proceed in the context of a contractual relationship if "the fraudulent misrepresentation is collateral to the contract").

**b. *ISTNA's Negligent Misrepresentation Claim Fails.***

ISTNA's claim for negligent misrepresentation also fails. Even assuming the Complaint contained specific allegations attributing misrepresentations to Trelleborg AB—which it does *not*—ISTNA does not plausibly allege a special or privity-like relationship required to sustain a negligent misrepresentation claim.[5] Under New York law, a negligent misrepresentation claim requires a special relationship approaching privity, which is absent where parties are mere counterparties or prospective counterparties pursuing their own business interests. *Raspberry Holdings LLC v. NextBank Int'l Inc.,* No. 24-cv-1529 (LJL), 2025 WL 438270, at *11 (S.D.N.Y. Feb. 7, 2025); *Greentech Rsch. LLC v. Wissman*, 104 A.D.3d 540, 540 (1st Dep't 2013) ("An arm's length business relationship, as existed here, is not generally considered to be the sort of confidential or fiduciary relationship that would support a cause of action for negligent misrepresentation.")

**c. *The Tortious Interference Claims Fail Against Trelleborg AB***

The Complaint asserts two causes of action for tortious interference: Tortious Interference With Contractual Relations (First Cause of Action); and Tortious Interference With Prospective Economic Relations (Second Cause of Action). Neither of these has merit either.

As to the tortious interference with contract claim, "a party cannot be held liable for tortious interference for refusing to assume a contract." *See Planet Payment, Inc. v. Nova Info. Sys., Inc.*, No. 07–cv–2520 (CBA)(RML), 2011 WL 1636921, at *12 (E.D.N.Y. Mar. 31, 2011). Indeed, at

---

[5] The negligent misrepresentation claim also suffers from many of the same deficiencies that plague the fraud claim—namely, the absence of any actionable misrepresentations and justifiable reliance. *See*, *supra*, at 21-22.

least one court in this Circuit has dismissed a tortious interference claim under New York law on facts that mirror ISTNA's allegations. *See High Falls Brewing Co., LLC v. Boston Beer Corp.*, 852 F. Supp. 2d 306, 312 (W.D.N.Y. 2011) (dismissing claim where defendant "merely purchased [the third party's] assets, but not its obligations under the Production Agreement, knowing that [the third party] would not be able to perform the production agreement after it sold its assets").

Here, ISTNA alleges that "Trelleborg" was "interested in potential business opportunities in the trenchless pipe repair business in the United States and Canada," and that "the fastest and cheapest way to make headway into the market was through IST Germany's assets." (Compl. ¶¶ 123, 129.) Not only does ISTNA allege that "Trelleborg" was exploring a structure that honored the Exclusivity Agreement, ISTNA alleges that "Trelleborg" explored purchasing ISTNA itself. (Compl. ¶¶ 17, 20–22, 140–145, 154–157, 234–237.) That those negotiations failed, and "Trelleborg" proceeded with an asset purchase that excluded the Exclusivity Agreement so it could expand its business in North America absent a "middleman", does not convert the acquisition into tortious interference. It brings the facts squarely within the authority cited above and therein. *High Falls Brewing Co., LLC.*, 852 F. Supp. at 312-13 (upholding claim for tortious interference under such circumstances "would essentially mean that anytime a party purchased a company's assets without assuming the company's outstanding contractual liabilities, the party would be liable for tortious interference with contract to any third-parties whose agreements with the company were subsequently breached"); *see* Restatement (Second) of Torts § 766 C.A.8 (Am. Law Inst. 1979).

Moreover, the economic interest defense specifically protects corporate entities from a tortious interference claim where the entity has "a legal or financial stake in the breaching party's business" barring any allegations of malice or illegality separate from the alleged breach. *White Plains Coat & Apron Co. Inc., v. Cintas Corp.*, 460 F.3d 281, 283-84 (2d Cir. 2006). Here, to the

extent any alleged conduct can even be attributed to Trelleborg AB (and it *cannot*), the alleged interference—acquiring the assets of IST Germany, structuring that transaction to exclude the Exclusivity Agreement, and then making use of the acquired assets—is exactly the kind of ordinary, self-interested business activity the defense protects. *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395 (S.D.N.Y. 2009) (recognizing economic interest defense based on defendant's 75% interest in breaching party and dismissing tortious interference claim). Despite its transparent attempts to villainize "Trelleborg," ISTNA's own allegations, including those concerning market access and customer capture (*See* Compl. ¶¶ 15, 18, 22, 91-93), underscore the *economic* motivations (as opposed to "malice" or "illegality") that prompted Trelleborg Germany's purchase of IST Germany's assets and subsequent commercial activity.

That IST Germany was *already* distressed and "in need of a bailout" not only underscores these economic motivations, it also undercuts any plausible inference that it was "Trelleborg," rather than IST Germany itself, that intentionally procured the breach. (Compl. ¶ 14.) In fact, that is how ISTNA begins its entire story: IST Germany's CEO was arrested for tax fraud, and needing that "bailout," he "turned to his personal friend, Jean Paul Mindermann . . . ." (*Id.*). But "[w]here a defendant merely welcomes a proposed breach, there is no liability." *See Planet Payment, Inc.,* 2011 WL 1636921, at *11 (collecting cases and explaining that "that [defendant] agreed to purchase [company's] assets cannot be found to have caused [company's] breach" where "the initial offer to structure the sale as an asset acquisition came from . . . 100 percent shareholder of [company], not [defendant]").

Indeed, to allow a tortious interference claim to proceed under these circumstances would set a dangerous precedent. ISTNA's theory of liability would require any entity looking to acquire the assets of another company to ensure the seller is left with enough assets to fulfill every single

obligation it has under existing contracts. There is no law requiring a company to either purchase all of another company or none of it. Although there may be commercial or even contractual consequences to such transactions, that does not convert ordinary commercial activity into tortious misconduct. It is perfectly understandable that a company like Trelleborg Germany might choose to sell directly to customers in North America rather than go through a distributor, or might not want to limit its ability to sell products in North America to a single "exclusive" distributor.

As to interference with prospective economic relations, in order to sustain that claim, New York law requires that the interference be performed by "wrongful means," which courts limit to conduct amounting to a crime or independent tort. *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (2004) ("as a general rule, the defendant's conduct must amount to a crime or an independent tort"); *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 547 F.3d 115, 132–33 (2d Cir. 2008) (no claim where allegations reflected economic self-interest, not wrongful means). At best, ISTNA alleges that, after the acquisition, Trelleborg entities contacted customers directly, provided pricing, and sold products without going through ISTNA. But that is ordinary competition, not the "wrongful means" necessary to support a tortious interference claim. *See Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 468 (S.D.N.Y. 2006) (collecting cases and explaining "wrongful means" describes conduct " 'more culpable' " than tortious interference with contract claim "for the sole purpose of inflicting intentional harm on plaintiffs").

Moreover, to be actionable, the tortious interference "must target some activities directed toward the third party and convince the third party not to enter into a business relationship with the plaintiff." *Gym Door Repairs, Inc. v. Young Equipment Sales, Inc.,* 206 F. Supp. 3d 869, 907-08 (S.D.N.Y. 2016). Although ISTNA alleges that "Trelleborg" (through Burke) told certain customers that "Trelleborg" would service customers without ISTNA, the Complaint attributes

ISTNA's losses to the loss of supply, price increases, prepayment demands, and "Trelleborg's" direct assumption of customer servicing after IST Germany's breach. (Compl. ¶¶ 224-226). It does not plead—as it must—that *Trelleborg AB* convinced any specifically identified third party not to enter into or continue doing business with ISTNA. *See Gym Door Repairs*, 206 F. Supp. 3d at 907-08; *Fonar Corp. v. Magnetic Resonance Plus, Inc.*, 957 F. Supp. 477, 482 (S.D.N.Y. 1997).

#### *d. The Aiding and Abetting a Breach of Fiduciary Duty Claim Fails*

ISTNA's aiding and abetting claim rests on a claim that ISTNA had a fiduciary relationship with IST Germany. But the Complaint's allegations do not support this. Rather, the Complaint's allegations describe a garden-variety, supplier-distributor arrangement. New York law is clear: "conventional business relationships" do not create fiduciary obligations absent well-pleaded facts showing a relationship of higher trust and dependence. *See, e.g., Oddo Asset Mgmt. v. Barclays Bank PLC*, 19 N.Y.3d 584, 593 (2012) ("[A] fiduciary relationship does not exist between parties engaged in an arm's length business transaction."); *SNS Bank, N.V. v. Citibank*, N.A., 7 A.D.3d 352, 355 (1st Dep't 2004) ("[A] conventional business relationship, without more, is insufficient to create a fiduciary relationship."); *William Kaufman Org., Ltd. v. Graham & James LLP*, 269 A.D.2d 171, 173 (1st Dep't 2000) (same).

Thus, the aiding-and-abetting claim against Trelleborg AB should also be dismissed.

## CONCLUSION

For the foregoing reasons, Trelleborg AB's Motion to Dismiss the Complaint should be granted in its entirety along with such other and further relief as this Court may deem proper. *In the alternative*, the Court should enforce the NDA's arbitration provision and compel arbitration.

Dated: April 6, 2026

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: *<u>/s/ Jonathan D. Pressment</u>*
Jonathan D. Pressment
Maximillian S. Shifrin
45 Rockefeller Plaza, 14th Floor
New York, NY 10111
Telephone: 212.589.4200
Facsimile: 212.589.4201
jpressment@bakerlaw.com
mshifrin@bakerlaw.com

*Attorneys for Defendant Trelleborg AB*

**CERTIFICATION OF WORD COUNT**

I, Jonathan D. Pressment, an attorney duly admitted to practice law before the courts of the State of New York, hereby certify that this memorandum of law complies with the word count limit set forth in Local Civil Rule 7.1 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York. According to the word-processing system used to prepare this memorandum of law, the total word count for all printed text exclusive of the material omitted under Local Civil Rule 7.1 is 8,729 words.

Dated: April 6, 2026

*/s/ Jonathan D. Pressment*
Jonathan D. Pressment